883 A.2d 218

**Gary BAHENA, et ux.**

v.

**Jonathan FOSTER, et ux.**

**No. 787, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Sept. 16, 2005.

Cynthia E. Young, Annapolis, for appellant.

James J. McGuire, Edgewater, for appellee.

Panel DEBORAH S. EYLER, KRAUSER, and CHARLES E. MOYLAN, JR. (Retired, specially assigned) JJ.

KRAUSER, J.

Joyce Kilmer wrote: "I think that I shall never see a poem lovely as a tree."[1] He apparently never lived next to the Bahenas. What was to Kilmer a vision of ineffable beauty was to the Bahenas' neighbors, appellees Jonathan and Janey Foster, an arboreal nightmare. Overhanging the Fosters' house was Gary and Valerie Bahenas' tree, large and purportedly in a state of decay. Uninterested in transforming their home into a tree house, the Fosters asked the Bahenas to remove the intruding trunk. When the Bahenas declined to do so, the Fosters filed a suit in the Circuit Court for Anne Arundel County, seeking compensatory and punitive damages for nuisance and negligence and requesting an injunction compelling the Bahenas to remove the tree.

Eventually, to resolve their dispute, the parties entered into a consent order, dividing responsibility for the removal of the tree between them. When the Bahenas failed to comply with that order, the Anne Arundel circuit court held them in contempt and ordered them to pay the attorney's fees and expert witness fees of the Fosters.

Challenging both the finding of contempt and the award of attorney's fees and expert witness fees, the Bahenas noted this appeal, presenting three issues for our review. Reordered and reworded, they are:

I. Whether the circuit court erred in finding the Bahenas in contempt without having expressly stated that they had "willfully" violated the consent order.

---

1. This is the opening line to Joyce Kilmer's poem, "Trees."

II. Whether the circuit court erred in awarding attorney's fees and expert witness costs arising out of the contempt hearings as litigation expenses.

III. Whether the circuit court lacked authority to impose attorney's fees or expert witness fees for contempt where the parties expressly struck from the consent order the provision providing for attorney's fees in the event of a breach of that order.

For the reasons that follow, we shall affirm the circuit court's finding of contempt, but vacate its award of attorney's fees and expert witness fees. Because we are vacating that award, we do not reach the Bahenas' third issue, which merely presents an alternative ground for the result we have reached.

### Background

The Bahenas and the Fosters live on contiguous properties in Annapolis, Maryland. In the Bahenas' back yard stands an eighty-five foot tulip poplar tree, composed of "double leaders," that is, two connected trunks. The tree is located approximately five feet from the boundary line separating the Bahenas' property from the Fosters' property. The left leader leans directly above and toward the Fosters' home, extending across the property line into the Fosters' yard. The right leader extends straight up.

In the spring of 2000, the right leader of the tree was struck by lightning and by the fall of 2002 had begun to show signs of decay. Janey Foster approached Gary Bahena and told him about the decay and expressed concern that the tree posed a hazard to their property. In response, Mr. Bahena denied that the tree posed any danger to the Fosters' property. Unhappy with this answer, the Fosters sent the Bahenas a letter requesting the tree be removed. The Bahenas responded by sending the Fosters a letter stating that the tree "appear[ed] to be healthy and pose[d] no appreciable hazard," but, if the Fosters wanted to remove the tree, they could do so.

In March 2003, the Fosters obtained opinions as to the condition of the tree from two licensed tree experts affiliated

with two separate tree service companies: Ken Bringley of Severn Tree Service, Inc. and Daniel T. Helgerman of Richard's Tree Service, Inc. Both experts viewed the tulip poplar tree from the Fosters' backyard on separate occasions. In his report to the Fosters, Bringley stated that the "trunk that was struck by lightning is in my opinion a hazard and needs to be removed." He cautioned that "the remaining trunk left alone would not be stable enough to withstand a severe thunderstorm and if the top or entire tree went down it would cause *severe* damage to the house under it." Helgerman, in his report, came to a similar conclusion. "[B]oth leaders of the tree," he opined, "are a potential hazard." The Fosters sent the two reports to the Bahenas.

Five months later, a large portion (forty feet) of the right leader, which had been previously struck by lightning, fell into the Fosters' yard, causing damage to their "outbuilding/workshop" and to two maple trees. Approximately thirty to forty feet of that leader remained standing, as did the left leader, which leaned over the Fosters' house. Advised by the fire department not to occupy their house until a tree expert had rendered an opinion as to whether it was safe to do so, the Fosters moved into a hotel and asked Bringley and Helgerman to re-inspect the tree. Bringley reported that his re-inspection disclosed that "it is not a question of *if* the tree falls but *when* the tree falls." When that occurs, he warned, "there will be a total loss of the house," and that could "very well" mean "a loss of life if anyone is home at the time." Helgerman expressed the same fear. He warned that "[t]he remaining half remains a hazard to [the Fosters'] home," explaining, "[t]his was a double leader tree and now with one leader gone, the other leader with tons of weight over [the Fosters'] roof will fail too." The Fosters sent both reports to the Bahenas and again requested that the Bahenas remove the tree.

When the Bahenas failed to respond to their request, the Fosters filed a complaint in the Circuit Court for Anne Arundel County, seeking compensatory and punitive damages for nuisance and negligence and requesting an injunction compelling the Bahenas to remove the tree. When efforts to

mediate the dispute failed, the Bahenas filed an answer, and thereafter, a motion to dismiss or for summary judgment.

After a hearing was held on the Fosters' petition, but before the court issued a ruling, the parties reached an agreement, which was then incorporated into a consent order. That order provided, among other things:

1. That on December 9, 2003, weather allowing, the Fosters shall trim and remove that part of the subject Tulip Poplar tree that extends over the property line, i.e. overhangs their property, in common between the Fosters and Bahenas without entering upon the Bahenas' property except to remove small debris that has fallen on to the Bahenas' property.

2. The Bahenas shall, within ten (10) business days, weather allowing, of the Fosters having removed that portion of the subject Tulip Poplar tree that extends over the common property line, remove in full the remaining portion of the subject Tulip Poplar tree without entering upon the Fosters' property except to remove small debris that has fallen on to the Fosters' property . . .

\* \* \*

7. Upon full and complete removal of the subject Tulip Poplar tree occurring without property damage to the other, the parties, by and through counsel, shall file Lines of Dismissal with Prejudice dismissing with prejudice the above-captioned action with the parties paying equally the cost of the dismissal fee. The parties are to make payment of their own costs.

8. That this Consent Order shall remain in full force and effect even if the Bahenas' Motion to Dismiss or, in the alternative, Motion for Summary Judgment is granted. Either party who fails to comply with the provisions of this Consent Order, or breaches any obligations thereunder, will indemnify the other, make the other financially whole, and to be responsible for any and all damages caused by the breach of the obligations hereunder, including but not limited to reasonable attorney's fees.

Thus, the parties agreed that the Fosters would first remove the portion of the tree "that extends over the[ir] property line" and, when that was done, the Bahenas would "within ten business days" extract "the remaining portion of the tree." After entering into the consent order, Mr. Bahena urged the Fosters, in an email to the Fosters' counsel, "to err on the side of taking too much down instead of too little." The next day, pursuant to paragraph 1 of the consent order, the Fosters had the portion of the tree that extended over the property line removed. Helgerman supervised the removal.

Later that day, Mr. Bahena sent an email to the Fosters' attorney stating, "[his] daughter just phoned to say that the Fosters' tree people appear to be doing clean up but did not remove all of the portion of the tree hanging over the Fosters' yard." The Fosters' attorney responded with a letter, stating that the "portion of the tree hanging over the Fosters' yard has been removed." Mr. Bahena, in turn, replied in an email that "the Fosters did not cut down all of the portion of the tree that was hanging over their yard" because, "when a large portion of the canopy was removed, a good bit of the tree straightened upright and [Mrs. Foster] concluded that she was no longer obligated to remove it . . ."

When the Bahenas failed to remove the remainder of the tree within ten business days of the Fosters' removal of the portion of the tree extending over the property line, the Fosters filed a contempt petition, requesting that the court hold the Bahenas in contempt for failing to comply with the consent order and ordering that they pay the Fosters' attorney's fees and all expenses the Fosters incurred as a result of the Bahenas' failure to comply with the consent order. Alleging bad faith on the part of the Bahenas, the Fosters also requested attorney's fees and costs pursuant to Md. Rule 1–341. In response, the Bahenas filed an opposition to the Fosters' petition as well as a cross-petition, seeking to hold the Fosters in contempt for failing to remove all of the portion of the tree that extended over the property line.

At a hearing on the cross-petitions, Helgerman, the Fosters' tree expert, stated that he was a "plant health care specialist" employed by Richard's Tree Service, Inc., and that his company was hired by the Fosters to remove the portion of the tree that extended over the property line. He testified that he and his crew arrived at the Fosters' property at 7:30 a.m. on December 9, 2003, and began trimming the tree around 8:10 a.m. Consistent with the email that Mr. Bahena sent to the Fosters' attorney, instructing the Fosters to "err on the side of taking too much down instead of too little," he trimmed the tree approximately two to three feet beyond the property line. To assure compliance with the consent order, he dropped a steel cable with a steel ball attached to it over the tree so that he could determine where exactly the property line was while he and his crew were trimming the tree. Thus, Helgerman "felt very certain" that he trimmed the tree beyond the property line. He further stated that, contrary to Mr. Bahena's assertions, the tree "did not move" or "straighten up," after a portion of the canopy was removed.

In contrast to the Fosters' efforts to comply with the consent order, Mr. Bahena made no effort to remove the remaining portion of the tree and he so testified. Nor was he present at the time the tree was being trimmed by the Fosters' tree service.

Ruling from the bench, the court found Gary and Valerie Bahena in contempt of the consent order, stating:

The bottom line is that there was an agreement, that the Bahenas signed the agreement, the Fosters signed the agreement, the Fosters were to remove that portion of the tree that extends over the common property line.

The only expert ... comes in and says "I dropped the ball on the line, I made it two or three feet closer to Mr. Bahena, over Mr. Bahena's property line to ensure that we got all of it. We trimmed it back. The tree did not move. I was there for six hours. The tree did not move."

... I don't think the tree moved ... I think the tree stood just as it did, just as the expert indicated.

1 do find that Mr. Bahena is in contempt of the Court's order. I'm going to order that the balance of the tree be taken down within 10 days and I will count, have [sic] my secretary contact both counsel for a hearing on damages.

The court entered an order on January 15, 2004, holding the Bahenas in contempt of the consent order and instructing them that they could "purge themselves of this contempt" by removing the remainder of the tree on or before January 22, 2004. The court also ordered that another hearing would be held to determine "attorney['s] fees, costs, and other expenses" incurred by the Fosters as a result of the Bahenas' failure to comply with the consent order.[2]

On April 21, 2004, the circuit court held a "damages" hearing. A month after the hearing, the court issued a memorandum opinion. Citing *Dodson v. Dodson*, 380 Md. 438, 845 A.2d 1194 (2004), the court denied the Fosters' request for compensatory damages, but awarded them attorney's fees and the costs relating to the expert testimony of Helgerman. Specifically, the court awarded the Fosters $5974.09: $4974.09 in attorney's fees and $1000.00 in expert witness fees. Explaining its ruling, the court stated:

In *Dodson*, the Court of Appeals of Maryland ruled on an issue of first impression, namely "whether compensatory damages may be awarded in a civil contempt action." *Id.* at 445, 845 A.2d 1194. After exhaustively reviewing cases concerning civil contempt, the Court stated "[u]nder settled Maryland law, one may not be held in contempt of court unless the failure to comply with the court order was or is willful." *Id.* at 452, 845 A.2d 1194. The Court specifically held "compensatory damages may not ordinarily be recovered in a civil contempt action." *Id.* at 454, 845 A.2d 1194. The Court explained, though, the issue in Dodson was not "whether, under exceptional circumstances, a willful viola-

---

**2.** Although the court did not expressly rule on the Bahenas' cross-petition, its ruling can only be read as a dismissal of that petition. In any event, it is not an issue before this Court, as the Bahenas have chosen not to raise it at this juncture.

tion of a court order, clearly and directly causing the plaintiff a monetary loss, could form the basis for a monetary award in a civil contempt case." *Id.*

In the instant case, the Court found Defendants willfully violated the Court's December 2003 order and therefore were in contempt. However, there are no exceptional circumstances in this case to allow the Court to award Plaintiffs compensatory damages.

Pursuant to Md. Rule 2–603(a), the prevailing party is entitled to costs, unless otherwise provided. However, allowance of such costs is within the discretion of the Court, unless abused. *Sinclair Estates, Inc. v. Charles R. Guthrie Co.,* 223 Md. 572, 165 A.2d 775 (1960); *Hoffman v. Glock,* 20 Md.App. 284, 315 A.2d 551 (1974). Specifically, in *Foster v. Foster,* the Court stated the reimbursement for litigation costs and expenses is within the discretion of the Court. *Foster,* 33 Md.App. 73, 364 A.2d 65, cert. denied, 278 Md. 722 (1976).

## Discussion

### I.

The Bahenas contend that the circuit court erred in holding them in contempt without expressly finding that they had "willfully" violated the consent order. That claim requires that we first consider the nature of the contempt at issue.

"[A] contempt may be direct and civil, or direct and criminal, or constructive and civil, or constructive and criminal." *Pearson v. State,* 28 Md.App. 464, 481, 347 A.2d 239 (1975). "A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience or orders and decrees primarily made to benefit such parties." *State v. Roll & Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973). Because civil contempt proceedings "are generally remedial in nature and are intended to coerce future compliance ... a penalty in a civil contempt must provide for purging." *Id.* "[A] civil contempt," however, "need be proved only by a preponderance of the evidence." *Id.*

 "On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive." *Id.* Given its punitive nature, "a criminal contempt must be shown beyond a reasonable doubt." *Id.*

 Civil and criminal contempt may be either direct or constructive. Direct contempt is a contempt "committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings," Md. Rule 15–202(b), while constructive contempt is "any contempt other than a direct contempt." Md. Rule 15–202(a).

 The contempt proceeding in this matter was "civil" in nature because it was "intended to preserve and enforce" the Fosters' rights and "to coerce" the Bahenas' "future compliance." *State v. Roll and Scholl,* 267 Md. at 728, 298 A.2d 867. The Bahenas, moreover, were afforded the opportunity to purge themselves of the contempt by removing the remainder of the tree within ten days of the order. *Id.* Their contempt was "constructive" because the Bahenas' violation of the consent order was committed outside of the presence of the circuit court. *See Dorsey v. State,* 295 Md. 217, 226, 454 A.2d 353 (1983); Md. Rules 15–202(a) and(b).

 As for all forms of contempt, the "conduct which precipitates the initiation of the contempt proceedings is the alleged failure, in contravention of a court order, to do that which has been ordered or the doing of that which is prohibited." *Lynch v. Lynch,* 342 Md. 509, 519, 677 A.2d 584 (1996). "When that conduct has been proven, the defendant may be held in contempt." *Id.* But, "one may not be held in contempt of a court order unless the failure to comply with the court order was or is willful." *Dodson v. Dodson,* 380 Md. 438, 452, 845 A.2d 1194 (2004). And that is the Bahenas' point. They argue that the circuit court erred in failing to find that they "willfully" violated the consent order at the original hearing.

 Although the circuit court did not use the word "willful" in holding that the Bahenas had violated the consent order; later, at the "damages" hearing, the court explained that it had found that the Bahenas had "willfully violated the Court's December 2003 order." In any event, as we have previously observed, the circuit court "does not have to follow a script. Indeed, the judge is 'presumed to know the law, and is presumed to have performed his duties properly.'" *Durkee v. Durkee*, 144 Md.App. 161, 185, 797 A.2d 94 (2002)(quoting *Lapides v. Lapides*, 50 Md.App. 248, 252, 437 A.2d 251 (1981)). That the circuit court did not use the term "willful" in finding that the Bahenas had violated the consent order at the original hearing does not rebut this presumption, given that there is no evidence that the court did not know or apply this standard. Moreover, the court's ruling, when read as a whole, clearly implies that the court found the Bahenas' conduct to be willful and the court's clarification of what it meant at the "damages" hearing confirms that.

And finally, as appellant does not claim that "a finding of fact upon which the contempt was imposed was clearly erroneous or that the court abused its discretion in finding a particular behavior to be contemptuous," *Droney v. Droney*, 102 Md.App. 672, 683–84, 651 A.2d 415 (1995), there is no extant basis for disturbing the circuit court's ruling.

## II.

 The Bahenas contend that the circuit court erred in awarding attorney's fees and expert witness fees that arose out of the contempt hearings as litigation expenses pursuant to Md. Rule 2–603, pointing out that "Maryland has long adhered to what is known as the 'American Rule' with regard to the imposition of attorney's fees to the prevailing party." That rule provides that, "in the absence of agreement, rule, statutory provision or limited case law exception, such fees are not recoverable." The "same constraint," the Bahenas maintain, "is true of expert witness fees." Thus, "there was no legal basis," they claim, "for the trial court to impose attorney's fees and expert witness fees" against them. We agree.

■ "In Maryland, '[t]he general rule is that costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for damages.'" *Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 11, 607 A.2d 537 (1992)(quoting *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 160, 73 A. 731 (1909))(compare with *St. Luke Evangelical Lutheran Church, Inc. v. Smith,* 318 Md. 337, 568 A.2d 35 (1990)(permitting counsel fees of prevailing party to be considered when punitive damages may be awarded)).

■ There are exceptions to this rule, as the Court of Appeals explained in *Hess Construction Company v. Board of Education of Prince George's County,* 341 Md. 155, 160, 669 A.2d 1352 (1996)(internal citations omitted):

Attorney's fees may be awarded where a statute allows for the imposition of such fees, and where parties to a contract have an agreement regarding attorney's fees. Where the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, the plaintiff may recover from the defendant, as damages, reasonable counsel fees incurred in the action with the third party. Additionally, a plaintiff in a malicious prosecution action, who has incurred counsel fees in the defense of the criminal charge, may be awarded those fees as damages in the civil actions.

But exceptions are quite rare under Maryland common law to the general rule that counsel fees, incurred by the prevailing party in the very litigation which that party prevailed, are not recoverable as compensatory damages against the losing party.

None of these exceptions are relevant to the instant case. There is no statutory provision or rule authorizing the recovery of attorney's fees in contempt proceedings. In fact, Md. Rule 15–207, which governs constructive contempt proceedings, does not provide for the recovery of attorney's fees or expert witness fees. Nor did the parties' contract authorize such a recovery. Although the parties' agreement originally provided that if one party failed to comply with the consent order, that party would "be responsible for any and all dam-

ages caused by the breach of the obligations ... including but not limited to reasonable attorney's fees," the phrase "including but not limited to reasonable attorney's fees" was later struck by the parties from the consent order. And finally, this is not a case in which "the wrongful conduct of a defendant force[d] a plaintiff into litigation with a third party" or in which "a plaintiff in a malicious prosecution action ... incurred counsel fees in the defense of the criminal charge." *Hess*, 341 Md. at 160, 669 A.2d 1352. Therefore, none of the exceptions, articulated by the Court of Appeals, apply to this case.

In awarding attorney's fees and expert witness fees to the Fosters, the circuit court relied upon Md. Rule 2–603. That rule states:

(a) **Allowance and Allocation.** Unless otherwise provided by rule, law, or order of court, the prevailing party is entitled to costs. The court, by order, may allocate costs among the parties.

(b) **Assessment by the Clerk.** The clerk shall assess as costs all fees of the clerk and sheriff, statutory fees actually paid to witnesses who testify, and, in proceedings under Title 7, Chapter 200 of these Rules, the costs specified by Rule 7–206(a). On written request of a party, the clerk shall assess other costs prescribed by rule or law. The clerk shall notify each part of the assessment in writing. On motion of any party filed within five days after the party receives notice of the clerk's assessment, the court shall review the action of the clerk.

(c) **Assessment by the Court.** When the court orders or requests a transcript or, on its own initiative, appoints an expert or interpreter, the court may assess as costs some or all of the expenses or may order payment of some or all of the expenses from public funds. On motion of a party and after hearing, if requested, the court may assess as costs any reasonable and necessary expenses, to the extent permitted by rule or law.

(d) **Joint Liability.** When an action is brought for the use or benefit of another as provided in Rule 2–201, the person for whom the action is brought and the person bringing the action, except the State of Maryland, shall be liable for the payment of any costs assessed against either of them.

(e) **Waiver of Costs in Domestic Relations Cases—Indigency.** In an action under Title 9, Chapter 200 of these Rules, the court shall waive final costs, including any compensation, fees, and costs of a master or examiner if the court finds that the party against whom the costs are assessed is unable to pay them by reason of poverty. The party may seek the waiver at the conclusion of the case in accordance with Rule 1–325(a). If the party was granted a waiver pursuant to that Rule and remains unable to pay the costs, the affidavit required by Rule 1–325(a) need only recite the existence of the prior waiver and the party's continued inability to pay

The award of costs is within the discretion of the circuit court. *Sinclair Estates, Inc. v. Charles R. Guthrie Co., Inc.,* 223 Md. 572, 575, 165 A.2d 775 (1960). But, "costs," under Md. Rule 2–603, do not include either attorney's fees or expert witness fees. Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 504–05 (3d ed.2003).

Furthermore, in seeking to recover their attorney's fees and costs under Md. Rule 1–341, the Fosters alleged that the Bahenas had "shown bad faith ... by their failure to comply with the Court's Order." But that claim did not provide a legal basis for the recovery of such fees and costs under that rule.

Maryland Rule 1–341 provides:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, includ-

ing reasonable attorney's fees, incurred by the adverse party in opposing it.

In short, the bad faith for which Md. Rule 1–341 permits the recovery of attorney's fees and costs is in "maintaining or defending any proceeding," not in violating a court order, though the latter may be evidence of the former. We shall therefore vacate the award of attorney's fees and expert witness fees and remand this case to the circuit court for it to consider whether to grant the Fosters' request for such fees, after applying the appropriate rule and standard.

**JUDGMENT AFFIRMED IN PART AND VACATED IN PART. CASE TO BE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANTS.**