931 A.2d 1164

David D. MARQUIS

v.

Mary H. MARQUIS.

No. 828, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Sept. 12, 2007.

736

738

David D. Marquis, pro se, of Dunkirk, for appellant.

Wendy Widmann, of Baltimore City, for appellee.

Argued before HOLLANDER, KRAUSER and BARBERA, JJ.

BARBERA, J.

■ In July 2004, the Circuit Court for St. Mary's County granted Mary H. Marquis, appellee ("Wife"), an absolute divorce from David D. Marquis, appellant ("Husband"). In the judgment of divorce, the court ordered Wife to receive 50 percent of the marital portion of Husband's military retirement benefits "on an if, as, and when received basis[.]" The court further directed that it would retain jurisdiction in the case for the purposes of a Constituted Pension Order ("CPO").[1]

Upon Husband's retirement from military service, the parties disagreed about whether Wife's portion of Husband's retirement benefits would be calculated before or after statutory, regulatory, or elective deductions were applied. Wife filed a petition for contempt, alleging that Husband was in default of the divorce decree because, *inter alia,* he failed to consent to Wife's proposed CPO. Following a hearing on the petition, the master issued a report recommending that the court find Husband in contempt. Husband thereafter filed exceptions to the master's recommendations and petitioned for a hearing on the exceptions. The court did not conduct a hearing. The court entered an order finding Husband in contempt and requiring him to sign Wife's proposed CPO and pay $2,333.00 in attorney's fees to Wife.

Husband timely appealed. He presents eight questions for our consideration, which we have consolidated into three:

---

1. In her brief, Wife points out that throughout the proceedings the parties, the master and the court improperly referred to the CPO as a Qualified Domestic Relations Order ("QDRO"). A QDRO is a domestic-relations order that creates or recognizes the existence of an alternative payee's right to receive all or a portion of the payments to a pension-plan participant. *See* 26 U.S.C.A. § 414(p) (2002, 2007 Supp.). A CPO is a similar order applicable to military retirement pay. *See* 10 U.S.C.A. § 1408 (1998, 2006 Supp.); *Collins v. Collins,* 144 Md.App. 395, 425–26, 798 A.2d 1155 (2002).

I. Did the court err by finding Husband in contempt of court for failing to sign Wife's proposed CPO?

II. Did the court err by entering a CPO that modified the parties' final judgment of absolute divorce?

III. Did the court err by granting Wife's motion to dismiss Husband's request for a hearing on his exceptions to the master's recommendations?

For the reasons set forth below, we affirm the circuit court's judgment.

## FACTS

The parties married on August 8, 1986. Three children were born of the marriage: David Marquis, born September 30, 1988; Lindly Marquis, born July 7, 1990; and Matthew Marquis, born September 5, 1991.

Before the parties married, Husband entered into the United States Navy. He continued to serve in the Navy during the parties' marriage. The record indicates that Husband anticipated retiring on December 1, 2006, and, upon his retirement, Husband was eligible to receive military retirement benefits.

On July 21, 2004, the parties divorced by a consent judgment of absolute divorce. In the judgment, the parties agreed that Wife would receive a 50 percent portion of the marital share of Husband's military retirement benefits. The judgment read, in part:

ORDERED, that the parties agree that [Wife] will receive a portion of [Husband's] retirement from the United State's [sic] Navy on an if, as, and when received basis with the numerator being 197 months, being the total amount of months married, the denominator being the total months earned towards the retirement divided by one half[.]

The court further ordered that it "shall retain jurisdiction in this matter for the purposes of a Qualified Domestic Relations Order [ ('QDRO') ] and/or a Qualifying Retirement Order[.]"

Following the divorce, both parties filed contempt petitions containing allegations related to, *inter alia*, alimony, child

support, and the sale of the parties' real property. The disposition of those issues is not raised in this appeal.

On June 16, 2005, counsel for Wife mailed to counsel for Husband a proposed CPO that implemented the terms of the parties' judgment of divorce. Husband did not sign the proposed CPO, but he returned the draft to Wife with suggested changes.

After incorporating the suggested changes, counsel for Wife again sent the proposed CPO to counsel for Husband for signature. Paragraph 5B of the proposed CPO read:

> *Military Benefits.* [Wife] shall receive Fifty Percent (50%) of a fraction of [Husband's] military retirement benefits. The fraction shall have as its numerator 197 and shall have as its denominator [Husband's] total months of creditable service for purposes of retired pay. [Wife's] share shall be credited with fifty percent (50%) of the same fraction of any future cost-of-living increases with respect thereto.

> For purposes of this Order, "military retirement benefits" means *retired pay actually paid* to which [Husband] would be entitled based on length of active duty or reserve military service and all payments paid or payable under the provisions of *Chapter 36 or Chapter 61* of Title 10 of the United States Code, *before* statutory, regulatory, or elective deductions are applied. It also includes all amounts taken by [Husband] in lieu of retirement benefits.

(Some emphasis added.)

Husband did not sign and return the proposed CPO.

On August 24, 2005, Wife mailed the proposed CPO to Husband for signature a third time. In a cover letter accompanying the proposed CPO, counsel for Wife warned counsel for Husband that Wife would file a petition for contempt if Husband did not sign the proposed CP O. Again, Husband did not sign the CPO.

On September 28, 2005, Wife filed a petition for contempt. She alleged that Husband was in default of the divorce

judgment because he failed, *inter alia*, to sign the proposed CPO.

On November 15, 2005, Wife's petition for contempt came on for a hearing before a master. Both parties were represented by counsel. The master first addressed allegations contained in the petition that are not relevant to the present appeal. Regarding the proposed CPO, Husband informed the master that he sought to change the words "military retirement benefits" in Paragraph 5B of the proposed CPO to "disposable military retired pay." The master deferred argument on issues relating to the CPO to permit the parties to obtain expert witnesses. The master stated that, in the event he found Husband's proposed changes to the CPO would harm Wife's rights as established in the judgment for divorce, Husband would be held in contempt and ordered to pay attorney's fees and expert witness fees.

Two weeks after the hearing, Husband, through counsel, mailed to Wife's counsel a letter requesting that the word "before" in Paragraph 5B of the proposed CPO be changed to "after." In effect, such a change would allow Wife's 50 percent of the marital share of Husband's military retirement pay to be calculated after statutory, regulatory, or elective deductions were taken from Husband's payments. In other words, Wife's share would be calculated from the amount of retirement pay that Husband actually receives, rather than from the gross amount before statutory, regulatory, or elective deductions are applied.

On January 10, 2006, the parties held a hearing before the master to address the allegations contained in Wife's petition for contempt relating to the proposed CPO. Husband was not represented by counsel at that hearing. Wife's expert witness, Wendy Widmann, was qualified as an expert in the area of "Qualified Domestic Relations Orders including those orders dealing with the division of military benefits under Maryland law." She testified that Husband's proposal to change "before" to "after" in Paragraph 5B of the proposed CPO would reduce Wife's portion of Husband's military retirement

benefits by limiting her share of retirement benefits to Husband's disposable retired pay. She testified that such a limitation was not supported by the judgment for divorce.

Wife testified at the hearing about the counsel and expert witness fees she incurred in filing the contempt petition.

Husband also testified at the hearing. He testified that, if the language of the proposed CPO were changed from "before" to "after," he would not take any action to reduce Wife's one-half share of his retirement benefits. He further argued that the judgment of divorce did not require him to cooperate in signing Wife's proposed CPO, and that his failure to sign the order did not render him in contempt of court. Husband did not present an expert witness.

Following the close of Husband's case, the master set forth his findings. He stated, in part:

The Court finds that [Husband], in his testimony and presentation to the Court on today's date, agrees that it was always his intent that his wife receive—or his former wife receive her portion of his military retirement benefit based on the [*Bangs* ] formula. That being the numerator being one hundred and ninety seven months over the denominator being the total number of months earned.

\* \* \*

The Court finds the difference between military retirement benefits and disposable retired pay is significant. That disposable retired pay allows the military service member to take certain exclusions that in fact would reduce the base amount of his retirement that [Wife] would be eligible for.

The master noted that in two cases, *Dexter v. Dexter*, 105 Md.App. 678, 661 A.2d 171, *cert. denied*, 341 Md. 27, 668 A.2d 36 (1995), and *Potts v. Potts*, 142 Md.App. 448, 790 A.2d 703, *cert. denied*, 369 Md. 181, 798 A.2d 553 (2002), this Court recognized that, absent an agreement by the parties, a service member should not be allowed to reduce his potential retirement benefits by electing a disability portion or by electing

other exclusions. The master found that changing the word "before" to "after" would permit Husband "to take certain exclusions including elected deductions that would in fact reduce the base amount of his retirement and would impact [Wife's] property rights." He recommended that the court find Husband in contempt for his failure to authorize Wife's proposed CPO. He also recommended that the court set the purge amount at $2,333.00, which includes $2,083.00 in Wife's expert witness fees and $250.00 in Wife's attorney's fees.

On January 18, 2006, Husband filed exceptions to the master's recommendations. He argued, *inter alia,* that the recommendations provide Wife with relief that was not granted in the parties' judgment of divorce. He further asserted that the master's recommendation that he pay Wife's expert witness fees is "punitive." Wife filed a response to Husband's exceptions, arguing that Husband failed to act in good faith in negotiating the terms of the CPO and that the evidence and testimony adduced at trial supported the master's findings.

On February 14, 2006, Husband filed a request for a hearing on the exceptions, and the court scheduled a hearing for March 14, 2006. On February 27, 2006, Wife filed a motion to strike Husband's request for a hearing, arguing that Husband's request was untimely pursuant to Maryland Rule 9–208(i)(1). That same day, the court continued the hearing on Husband's exceptions until April 13, 2006. Two weeks later, the court set the matter for a hearing on May 4, 2006.

On April 3, 2006, Wife filed a second request to continue the hearing on Husband's exceptions. The court granted the request and continued the hearing until May 23, 2006, but a hearing was never conducted.

On May 11, 2006, the master filed a written report setting forth his recommendations. That same day, the court entered three orders. In the first order, the court struck Husband's petition for a hearing on the ground that the petition was not timely filed. In the second order, entitled "Constituted Pension Order," the court directed Husband to pay Wife her 50 percent marital share of Husband's military retirement bene-

fits before any statutory, regulatory, or elective deductions were applied. The court signed a third order in which it found Husband in contempt of court for failure to authorize Wife's proposed CPO, ordered Husband to sign the CPO, and ordered that Husband could purge himself of contempt by paying $2,333.00 to Wife.

Husband noted a timely appeal.[2]

## DISCUSSION

### I.

Husband raises a number of arguments in support of his contention that the court erred in finding him in contempt for failing to sign Wife's proposed CPO. He argues, *inter alia,* that the court erred in accepting the master's recommendations because the master relied solely on misleading expert testimony, improperly excluded exhibits demonstrating his good faith efforts to cooperate in drafting a CPO, and failed to advise him of his right to counsel at the January 10, 2006 hearing. Husband further argues that the court abused its discretion by finding him in contempt because no statute or court order required him to sign Wife's proposed CPO. He also contends that the court erred in failing to rule on his exceptions to the master's recommendations. He argues, moreover, that the court erred in setting the purge amount. We address each contention in turn.

We begin by briefly summarizing Maryland law relating to civil contempt proceedings. "A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and

---

**2.** *Husband's notice of appeal states that he "appeals to the Maryland Court of Special Appeals the Order entered in this case on 11 May 2006." The court signed three orders on May 11, 2006. Wife contends that it is not clear from which order Husband appeals. In his brief, Husband states that he appeals from all three orders issued on May 11, 2006. We are satisfied that all of Husband's appellate claims are properly before us. See B & K Rentals and Sales Co., Inc. v. Universal Leaf Tobacco Co., 319 Md. 127, 133–34, 571 A.2d 1213 (1990).*

decrees primarily made to benefit such parties." *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973); *accord Bahena v. Foster,* 164 Md.App. 275, 286, 883 A.2d 218 (2005). "[C]ivil contempt proceedings are generally remedial in nature and are intended to coerce future compliance," and "a penalty in a civil contempt must provide for purging." *Bahena,* 164 Md.App. at 286, 883 A.2d 218 (internal quotation marks omitted). Civil contempt "need be proved only by a preponderance of the evidence." *Id.* (citation and internal quotation marks omitted).

■■■■ The failure to obey a court order may precipitate the initiation of contempt proceedings. *See id.* "[O]ne may not be held in contempt of a court order," however, "unless the failure to comply with the court order was or is willful." *Id.* at 287, 883 A.2d 218. "The order must be sufficiently definite, certain, and specific in its terms so that the party may understand precisely what conduct the order requires." *Droney v. Droney,* 102 Md.App. 672, 684, 651 A.2d·415 (1995).

■■■■ The decision to hold a party in contempt is vested in the trial court. *See Bienenfeld v. Bennett–White,* 91 Md.App. 488, 514, 605 A.2d 172, *cert. denied,* 327 Md. 625, 612 A.2d 256 (1992). "This Court will only reverse such a decision upon a showing that a finding of fact upon which the contempt was imposed was clearly erroneous or that the court abused its discretion in finding particular behavior to be contemptuous." *Droney,* 102 Md.App. at 683–84, 651 A.2d 415; *see also Bienenfeld,* 91 Md.App. at 514, 605 A.2d 172.

## A.

Husband's primary challenge on appeal relates to the trial court's acceptance of the master's recommendations. He argues that the court erred in accepting the master's recommendations because the master relied solely on misleading expert testimony, improperly excluded exhibits, and failed to advise him of his right to counsel at the January 10, 2006 hearing. We find no merit in any of those complaints.

Husband takes issue with the testimony offered by Wife's expert, Ms. Widmann, concerning 10 U.S.C. § 1408. That section, entitled "Payment of retired or retainer pay in compliance with court order," addresses the payment of child support and alimony from a retired service member's retirement pay. Regarding § 1408, Ms. Widmann testified: "[T]he statute says that [] an order that does not limit the amounts paid to disposable retired pay is an acceptable order to the military. It says that in the statute specifically."

Husband claims that Ms. Widmann's statement is "false or at least misleading" in light of 10 U.S.C. § 1408(e)(5), which provides:

> *A court order which itself or because of previously served court orders provides for the payment of an amount which exceeds the amount of disposable retired pay available for payment* because of the limit set forth in paragraph (1), or which, because of previously served court orders or legal process previously served under section 459 of the Social Security Act (42 U.S.C. 659), provides for payment of an amount that exceeds the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4), *shall not be considered to be irregular on its face solely for that reason.* However, such order shall be considered to be fully satisfied for purposes of this section by the payment to the spouse or former spouse of the maximum amount of disposable retired pay permitted under paragraph (1) and subparagraph (B) of paragraph (4).[3]

(Emphasis added.)

We do not agree with Husband that Ms. Widmann's statement regarding § 1408 was false or misleading. Ms. Wid-

---

**3.** 10 U.S.C. § 1408(a)(4) defines the term "disposable retired pay." That section states:

The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—
(A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

mann testified that an order that "does not limit the amounts paid to disposable retired pay is an acceptable order[.]" That statement does not contradict section (e)(5), which provides that an order directing the payment of an amount exceeding disposable retired pay "shall not be considered to be irregular on its face solely for that reason." Wife agrees that "the military, pursuant to statute and regulation, will not pay a former spouse directly more than 50% of disposable retired pay pursuant to Court Order." The regulations, however, do not prohibit a military member from directly making payments that exceed 50 percent of disposable retired pay. *See* 10 U.S.C. § 1408(e)(6) ("Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired pay under this section have been made in the maxi-

---

(B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-marital or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

(C) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

(D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

10 U.S.C. § 1408(e)(1) provides: "The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay." 10 U.S.C. § 1408(e)(4)(B) provides:

(B) Notwithstanding any other provision of law, the total amount of the disposable retired pay of a member payable by the Secretary concerned under all court orders pursuant to this section and all legal processes pursuant to section 459 of the Social Security Act (42 U.S.C. 659) with respect to a member may not exceed 65 percent of the amount o f the retired p ay payable to such member that is considered under section 462 of the Social Security Act (42 U.S.C. 662) to be remuneration for employment that is payable by the United States.

mum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4).").

Husband also takes issue with Ms. Widmann's contention that the CPO proposed by Wife contains all language required by federal regulation. He argues that the order violates federal regulation because it does not "provide specifically for payment of a fixed amount expressed in U.S. dollars or payment as a percentage or a fraction of disposable retired pay."

At the hearing, Ms. Widmann testified that "it is infrequent that an award [of military retirement benefits to a former spouse] is stated as a fixed dollar amount." She stated: "The more common method of expressing the former spouse's award is in the percentage of the member's disposable retired pay." When asked how the amount of Wife's award was stated in the proposed CPO, Ms. Widmann responded, "It's divided as a percentage ... because it's one half a fraction, the numerator being one ninety seven over the denominator being the total months served. So its essentially a percentage award." Husband has not convinced us that Ms. Widmann's testimony was false or that the proposed CPO fails to contain all the language required by federal regulation.[4]

As for Husband's claim that the court erred in accepting the master's report and recommendations because the master relied "solely on expert testimony," nothing in the record supports Husband's assertion. The master heard testimony not only from Wife's expert, Ms. Widmann, but also from Husband and Wife. The master's report and recommendations do not indicate that he relied on expert testimony only and failed to consider other testimony and evidence offered by the parties.

Husband also argues that the court erred in accepting the master's recommendations because the master erroneously

---

**4.** We note, moreover, that both parties direct us to 32 C.F.R. § 63.6, which was removed in October 2001. *See* 66 Fed.Reg. 53958 (October 25, 2001).

refused to admit two defense exhibits into evidence. He contends that the exhibits show that he acted in good faith and cooperated with the drafting of a CPO. Both exhibits, which were letters from Husband's counsel to Wife's counsel, set forth Husband's requested changes to Wife's proposed CPO. The first letter, dated July 1, 2005, detailed several specific changes to the proposed CPO. The second letter, dated November 29, 2005, requested only the change of the word "before" to "after" in Paragraph 5B of the proposed CPO.

Counsel for Wife objected to the admission of the July 1, 2005 letter on the ground that it was not relevant. The master sustained the objection, but asked Husband to testify about the information contained in the letter. Husband testified:

> [F]rom the first time my attorney has—was notified by [Wife] about the—trying to draft a constituted military pension order, there's been numerous communications back and forth between attorneys.... The attorneys have worked diligently trying to come up with language that both parties would accept.

Regarding the November 29, 2005 letter, the master heard extensive evidence on Husband's request to change the word "before" to "after" in Paragraph 5B of the proposed CPO. The master received into evidence Defense Exhibit 2, a letter dated November 30, 2005, that was substantially similar to the November 29, 2005 letter. Both letters were addressed from Husband's counsel to Wife's counsel, and both letters set forth Husband's request to change the word "before" to "after." Wife's expert witness, Ms. Widmann, testified that, in the November 30, 2005 letter, counsel for Husband requested "to change the word before to the word after[.]" And Husband testified that he "agreed to give on every single thing requested in the pension order with the exception of one word." Because the master heard evidence on the contents of the July 1, 2005 and November 29, 2005 letters, Husband has not persuaded us that the master's refusal to admit the two exhibits into evidence, prejudiced him and thereby created

error requiring reversal of the order of contempt. *See Crane v. Dunn,* 382 Md. 83, 91, 854 A.2d 1180 (2004).

Husband further challenges the court's acceptance of the master's recommendations on the ground that the master did not advise him of his right to counsel. He argues that the master deprived him of due process in violation of Article 24 of the Maryland Declaration of Rights by allowing him to act as his own attorney at the January 10, 2006 hearing without notifying him of his right to counsel.

We have mentioned that Husband was represented by counsel at the first hearing before the master, but not the second.[5] Before Husband testified at the second hearing, the master stated:

> I'm running the Court, you're not so listen to me. You actually are right now a lawyer. So I need you to come up here. Now, this is highly unorthodox, but we're going to actually have—swear you in as a lawyer and you can tell the truth. Swear him in.

Thereafter, Husband was sworn in and proceeded to argue and testify on his own behalf. He argues on appeal that no provision of the Maryland Constitution or the Maryland Rules allowed the master to swear him in as an attorney.

Wife responds that Husband was informed of his right to counsel in the petition for contempt.[6] She contends that Husband "had every opportunity to avail himself of an attorney's representation if he so desired." She correctly asserts, moreover, that Maryland Rule 15–206(e)(1), which addresses waiver of the right to counsel, applies only to a hearing before

---

**5.** Husband has represented himself at every proceeding since then.

**6.** The contempt petition included a page that restated the notice in the form required by Maryland Rule 15–206(c) when "incarceration to compel the court's order is sought." That notice informs the alleged contemnor of the allegation that he should go to jail until the court's order is obeyed; he has a right to be represented by counsel and the benefits of counsel; the Public Defender may provide a lawyer; he should not delay in obtaining a lawyer; and failure to be present at the hearing on the petition will subject him to arrest. The petition in this case did not request incarceration.

a judge where incarceration is sought and does not apply to the January 10, 2006 hearing before the master.[7]

 We agree with Wife. The master swore in Husband so that he could provide testimony under oath. The master did not, however, deprive Husband of due process by allowing him to proceed *pro se.* The petition for contempt informed Husband of his right to counsel, and, in fact, it encouraged Husband to seek legal representation "at once." Husband evidently was aware of the right, for he was represented by counsel at the November 15, 2005 hearing before the master. He therefore cannot successfully complain that either he had no notice of his right to counsel or that the master erred by allowing him to proceed without counsel.

## B.

Husband also takes issue with the court's contempt finding because, he argues, the specific and unambiguous language of

---

7. Maryland Rule 15–206(e)(1) provides:

(e) **Waiver of counsel if incarceration is sought.** (1) Applicability. This section applies if incarceration is sought and applies only to court hearings before a judge.

(2) Appearance in Court Without Counsel. (A) If the alleged contemnor appears in court without counsel, the court shall make certain that the alleged contemnor has received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice in accordance with Rule 9–208(d);

(B) If the alleged contemnor indicates a desire to waive counsel, the court shall determine, after an examination of the alleged contemnor on the record, that the waiver is knowing and voluntary;

(C) If the alleged contemnor indicates a desire to have counsel and the court finds that the alleged contemnor received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice pursuant to Rule 9–208(d), the court shall permit the alleged contemnor to explain the appearance without counsel. If the court finds that there is a meritorious reason for the alleged contemnor's appearance without counsel, the court shall continue the action to a later time and advise the alleged contemnor that if counsel does not enter an appearance by that time, the action will proceed with the alleged contemnor unrepresented by counsel. If the court finds that there is no meritorious reason for the alleged contemnor's appearance without counsel, the court may determine that the alleged contemnor has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing.

the judgment for absolute divorce did not compel him to consent to a CPO or to cooperate in the drafting of a CPO. He argues that Wife used contempt proceedings to force him to consent to an order that was not required by the divorce decree. We disagree.

"It is well settled that, where cooperation is necessary to the performance of a condition [in a contract], a duty to cooperate will be implied[.]" *Dexter,* 105 Md.App. 678, 684, 661 A.2d 171 (citation and internal quotation marks omitted). In *Dexter,* the parties entered into an agreement upon their divorce regarding military retirement benefits that was incorporated into their divorce decree. The agreement entitled the Wife to " 'forty-seven and a half percent (47.5%) of the [Husband's] military pension ... on a monthly basis "as, if, and when" it is paid by the Department of the Army to the [Husband].' " *Id.* at 679, 661 A.2d 171. Shortly after Husband was placed on retirement, he voluntarily waived his rights to Army retirement benefits in order to qualify for greater benefits through the Veterans Administration ("VA"). *Id.* at 680, 661 A.2d 171. The statute providing for VA benefits prohibits division of the benefits to a former spouse; thus, in waiving the Army benefits, the Husband effectively deprived the Wife of any benefits. *Id.* The trial court ruled that, under the parties' agreement, the Husband could not pursue the VA benefits and at the same time deprive the Wife of the benefits she bargained for under the agreement. *Id.* at 683, 661 A.2d 171. We affirmed the trial court and held that each party had an obligation to take reasonable steps to bring the agreement to fruition. *Id.* at 684, 661 A.2d 171.

In the present case, the consent judgment of divorce specifically provides that Wife shall receive an expressly stated percentage portion of Husband's military retirement benefits "on an if, as, and when received basis." Pursuant to the consent judgment, the Husband has " 'an obligation to act in good faith and to deal fairly with the other party ... and an obligation to cooperate when necessary to the performance of a condition.' " *Id.* at 685, 661 A.2d 171 (quoting *P.V. Proper-*

*ties, Inc. v. Rock Creek Village Assocs. Ltd. P'ship,* 77 Md.App. 77, 86–87, 549 A.2d 403 (1988)). There is no merit to Husband's argument that he was not required to cooperate with the drafting and signing of a CPO that accurately reflects the consent judgment.

## C.

Husband next argues that the court erred in finding him in contempt because it did not rule on his exceptions to the master's recommendations. He argues that the exceptions set forth errors by the master and the court's orders do not reflect its consideration of the exceptions or its independent determination of the issues.

The court order granting Wife's motion to strike Husband's petition for a hearing reads:

THIS MATTER, having come before the Court by Motion, and all matters having been considered, it is ...

ORDERED that the [Wife's] Motion to Strike the [Husband's] Petition for a Hearing on [Husband's] Exceptions to Recommendations of Master is hereby granted; and it is further

ORDERED that the Court finds that [Husband's] Request for Hearing was not timely filed and that an Order based on the Report and Recommendations of the Master shall be signed concurrently herewith.

"Exceptions to the recommendations of a master warrant an independent consideration by the trial court." *Kierein v. Kierein,* 115 Md.App. 448, 453, 693 A.2d 1157 (1997). The court must "exercise its independent judgment, consider the allegations[,] and decide each such question." *Id.* at 454, 693 A.2d 1157 (citation and internal quotation marks omitted). "The trial court may consider additional testimony or independently consider the report and recommendations of the master. The trial court 'should defer to the fact-finding of the master where the fact-finding is supported by credible evidence, and is not, therefore, clearly erroneous.'" *Id.* at 453, 693 A.2d 1157 (quoting *Wenger v. Wenger,* 42 Md.App.

596, 602, 402 A.2d 94 (1979)). The court, however, need not "give a litany of its reasons for accepting and adopting the fact finding, conclusions, and recommendations of the master." *Kierein,* 115 Md.App. at 455–56, 693 A.2d 1157.

Moreover, "[t]rial judges are presumed to know the law and to apply it properly." *Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 426, 914 A.2d 113 (2007) (citation and internal quotation marks omitted). Indeed, we presume judges know the law and apply it "even in the absence of a verbal indication of having considered it." *Wagner v. Wagner,* 109 Md.App. 1, 50, 674 A.2d 1, *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996). A judge is not required to "set out in intimate detail each and every step in his or her thought process." *Kirsner v. Edelmann,* 65 Md.App. 185, 196 n. 9, 499 A.2d 1313 (1985).

We find no merit in Husband's assertion that the court failed to exercise its independent judgment or to consider Husband's exceptions to the master's recommendations.

As we have mentioned, Wife presented expert testimony at the January 10, 2006 hearing that Husband's proposed changes to the CPO would negatively affect her property rights, as set forth in the consent judgment. Husband, for his part, presented no expert testimony to the contrary. The master therefore based his report and recommendations on Wife's undisputed expert testimony. Because the report and recommendations were supported by credible evidence, the court's deference to those findings was not clearly erroneous. *See Kierein,* 115 Md.App. at 453, 693 A.2d 1157.

The court stated in the May 11, 2007 order granting Wife's request to strike Husband's untimely request for a hearing on the exceptions that it had considered "all matters." In so doing, the court was not required to "set out in intimate detail each and every step" of its thought process. *Kirsner,* 65 Md.App. at 196, n. 9, 499 A.2d 1313. We therefore reject as meritless Husband's contention that the court's orders do not

reflect its consideration of the exceptions or its independent determination of the issues.

## D.

Finally, Husband challenges the court's finding of contempt by arguing that the court erred in imposing the purge amount. He contends that the court failed to comply with Maryland Rule 15–207(d)(2) by not specifying in a written order the sanction for the contempt. Rule 15–207(d)(2) provides:

> When a court or jury makes a finding of contempt, the court shall issue a written order that specifies the sanction imposed for the contempt. In the case of a civil contempt, the order shall specify how the contempt may be purged. In the case of a criminal contempt, if the sanction is incarceration, the order shall specify a determinate term and any condition under which the sanction may be suspended, modified, revoked, or terminated.

Wife responds that, at the November 15, 2005 hearing, the parties agreed to postpone the proceedings related to the military retirement payments to allow both parties to obtain expert witnesses. She states that the parties postponed the proceedings "with the express stipulation" that, if the expert testimony showed that Husband's proposed changes were unreasonable or would harm Wife's rights as established under the judgment for absolute divorce, then Husband would be held in contempt and ordered to pay a purge amount measured by Wife's expert witness's fees and counsel's fees.

The transcript of the hearing reveals that the master indeed informed Husband that he would be required to pay Wife's counsel fees if he were found in contempt. In the presence of Husband's counsel, the master stated to Wife's counsel:

> Well, in the future the issue is over the QDRO, so what you need to do . . . is you have your client identify it, and offer it as an exhibit. Then we'll have [Husband's attorney] tell us what [is] wrong with it. Now, if what she says is wrong with it is legitimate and reasonable, then we're not

going to mark the QDRO down as a contemptible issue. We're going to straighten it out and get it signed.

If [attorney for Husband's] issue is unreasonable, then we're going to talk about lawyer fees. And we're going to talk about lawyer fees—I'm going to try to figure out who refused to approve it.

The court continued: "[H]ere's the bottom line, if his position is determined to be unreasonable, he's going to pay those lawyer fees." The master thus informed Husband that if his reasoning for refusing to sign the proposed CPO was unjustified, then the court would find him in contempt and require him to purge the contempt by paying Wife's counsel fees.

Husband's argument that the court erred by failing to specify in a written order the sanction for contempt is also without merit. At the January 10, 2006 hearing, Wife testified about the attorney's fees that she incurred in bringing the contempt petition. Thereafter, on May 11, 2006, the court issued an order that specifically states Husband "may purge himself of contempt by paying the sum of $2,333.00 on or before July 10, 2006[,]" which included $2,083.00 in expert witness fees and $250.00 in additional attorney's fees.

## II.

Husband next contends that the court abused its discretion by ordering him to sign the CPO proposed by Wife, because it both modified the parties' judgment of absolute divorce and was contrary to 10 U.S.C. § 1408. He presents no argument in his brief to support those assertions.

We do not agree with Husband that the court's CPO modified the parties' judgment of absolute divorce. The divorce judgment states specifically that Wife shall receive a portion of Husband's military retirement benefits "on an if, as, and when received basis." The May 11, 2006 CPO issued by the court ensures that Wife will receive the benefits she bargained for under the consent judgment of divorce.

Husband, moreover, has not explained how he believes the CPO violates 10 U.S.C. § 1408. Wife's expert witness testified that the CPO is consistent with 10 U.S.C. § 1408, and Husband has presented no argument to the contrary, either at trial or on appeal. We stated in *Sodergren v. Johns Hopkins University Applied Physics Laboratory* that "[i]t is not our function to seek out the law in support of a party's appellate contentions." 138 Md.App. 686, 707, 773 A.2d 592 (2001) (citation and internal quotation marks omitted). We decline "to attempt to fashion coherent legal theories to support appellant's sweeping claims." *Id.* (citation and internal quotation marks omitted).

### III.

Lastly, Husband contends that the court erred by not holding a hearing on his exceptions to the master's recommendations. He argues that Wife's motion to strike Husband's request for a hearing on the exceptions was untimely filed and the court therefore erred in granting the motion.

Wife responds that Husband's request for a hearing on the exceptions was itself not timely filed. She contends that Maryland Rule 9–208(i) permitted the court to rule on Husband's exceptions without conducting a hearing.

Maryland Rule 9–208(i) provides:

**Hearing on exceptions.** (1) Generally. The court may decide exceptions without a hearing, unless a request for a hearing is filed with the exceptions or by an opposing party *within ten days after service of the exceptions.* The exceptions shall be decided on the evidence presented to the master unless: (A) the excepting party sets forth with particularity the additional evidence to be offered and the reasons why the evidence was not offered before the master, and (B) the court determines that the additional evidence should be considered. If additional evidence is to be considered, the court may remand the matter to the master to hear and consider the additional evidence or conduct a *de novo* hearing.

(2) *When hearing to be held.* A hearing on exceptions, if timely requested, shall be held within 60 days after the filing of the exceptions unless the parties otherwise agree in writing. If a transcript cannot be completed in time for the scheduled hearing and the parties cannot agree to an extension of time or to a statement of facts, the court may use the electronic recording in lieu of the transcript at the hearing or continue the hearing until the transcript is completed.

(Emphasis added.)

 We agree with Wife that Husband's request for a hearing was not timely filed pursuant to Rule 9–208(i)(1). On January 18, 2006, Husband filed exceptions to the master's report and recommendations without a request for a hearing. He did not request a hearing within ten days after the exceptions were filed; it was not until 27 days after he filed his exceptions that he requested a hearing. Moreover, Wife's response to the exceptions, which was filed on February 3, 2006, also did not include a request for a hearing. As neither party requested a hearing on the exceptions "within ten days after service of the exceptions," the court did not err in ruling on the exceptions without conducting a hearing.

Husband's argument that Wife's motion to strike the request for a hearing was not timely filed does not persuade us. Regardless of the untimeliness of Husband's motion to strike the request for a hearing, Husband's request was itself untimely. The court, therefore, could properly deny the request for a hearing pursuant to Rule 9–208(i).

**JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.**