FILED
10/17/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2018 Session

**RICKY L. BOREN, ET AL. v. HILL BOREN, P.C., ET AL.**

**Appeal from the Chancery Court for Madison County**
**No. 75056    Robert E. Lee Davies, Senior Judge**

_____

**No. W2017-02383-COA-R3-CV**
_____

T. Robert Hill ("Hill") and Hill Boren, P.C. (collectively "Defendants") appeal the November 6, 2017 order of the Chancery Court for Madison County ("the Trial Court") finding Defendants in civil contempt. Defendants raise multiple issues regarding whether Defendants received proper notice, whether damages may be awarded absent a finding of willful contempt, whether the Trial Court erred in awarding damages pursuant to Tenn. Code Ann. § 29-9-104, and whether the Trial Court erred in allowing Plaintiffs access to corporate documents. We find and hold that Defendants received sufficient notice, that damages may not be awarded absent a finding of willful contempt, that the Trial Court did not err in awarding damages pursuant to Tenn. Code Ann. § 29-9-104 for the willful failure to turn over a computer server, and that the Trial Court did not err in allowing access to corporate documents. We, therefore, vacate the awards of damages for failure to turn over the copy machine and failure to turn over the Copitraks. We affirm the Trial Court's holding Defendants in civil contempt with regard to the failure to turn over the server and awarding damages for this contempt. The remainder of the Trial Court's order is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

T. Robert Hill, Jackson, Tennessee, for the appellant, Hill Boren, P.C.

Tamara Hill, Jackson, Tennessee, for the appellant, T. Robert Hill.

Lewis L. Cobb and Teresa A. Luna, Jackson, Tennessee, for the appellees, Ricky L. Boren on behalf of Hill Boren, P.C.; Ricky L. Boren; and Jeffrey P. Boyd.

# OPINION

## Background

Ricky L. Boren on behalf of Hill Boren, P.C.; Ricky L. Boren, individually; and Jeffrey P. Boyd (collectively "Plaintiffs") sued Defendants with regard to ownership of stock in Hill Boren, P.C., a law firm in Jackson, Tennessee. The Trial Court entered an order on January 9, 2017 ordering, *inter alia*:

> 3. The following actions shall be taken in furtherance of the maintaining of the status quo:
>
> * * *
>
> b. <u>Computers, Software, and Computer Equipment</u>: Defendants will allow Boren and Boyd to possess all of Hill Boren P.C.'s computers, computer software, and computer equipment necessary for Boren and Boyd to carry out their law practices. This would include all computers, computer software, and computer equipment used by the staff of Hill Boren, P.C. but not the computers from the offices of T. Robert Hill or Tamara Hill. Along with this possession, Boren and Boyd will assume any expenses, liability, leases and/or payments for these computers, computer software, and computer equipment.

In February of 2017, Plaintiffs filed a motion for contempt alleging, in pertinent part, that Defendants had failed to turn over possession of a copier, Copitraks software/hardware, corporate documents, and a computer server, among other things. The Trial Court held a hearing on the motion for contempt in September of 2017 and heard testimony with regard to the alleged contempt.

Jeffrey P. Boyd ("Boyd") testified at the hearing that he was present on December 30, 2016, which had been set as the moving day for Plaintiffs to move furniture and equipment from Hill Boren, P.C. to Plaintiffs' new office location. Boyd testified that a request was made for the computer server ("the Server"), but Hill refused to turn it over. Boyd stated:

> [W]e appeared pursuant to the court order to retrieve furniture and office equipment and files. And as part of that, we were supposed to get the server.

Mr. Cobb asked about the server, and Mr. Hill flatly denied us the ability to get that and actually screamed bloody murder at David Riggs for even bringing it up about us getting the server.

Instead of being given the Server, Plaintiffs were given a smaller computer server. Boyd testified that this smaller server did not work well for Plaintiffs. Boyd testified:

Basically we had all the stuff on that - - on that temporary server, but because of the - - the size volume and the usage of it, literally I would be in the middle of a brief, and my computer would crash, and we would lose - - I would lose documents because the server wasn't capable, when everybody was on it doing various things, to handle the whole process efficiently.

Boyd testified that the lease on the Server was set to expire in July of 2017. Between January 1, 2017 and July of 2017, Plaintiffs paid $18,464.32 on the lease.[1] Plaintiffs obtained their own server in July of 2017. Boyd stated that Plaintiffs "would have re-upped with the same lease with the same equipment going forward," if they had received the Server. He explained: "That system was adequate for our needs and would still be adequate for our needs but for them not giving [the Server] up." Boyd testified that due to the inadequacy of the smaller server Plaintiffs terminated the old lease "based on the functionality of the system that we had." He stated that Plaintiffs were in a position where they had to take that action. Boyd testified that the smaller server gave "[s]ubstantially diminished" performance, and he estimated it cost Plaintiffs "25, 30 percent efficiency lost in the usage of the software and programs and the day to day."

Michele Eckhart ("Eckhart") testified that she previously worked for Hill Boren, P.C., and that she currently works for Boren & Boyd. Eckhart started as the receptionist at Hill Boren, P.C. and eventually moved up to the position of office manager. Eckhart was present on December 30th, the moving day, when the Server was discussed. She testified that Hill refused to allow Plaintiffs to take the Server. She stated: "prior to that day, [Hill] did say we could have the server. On that particular day, I remember there being a discussion about he was not going to let them move the server, but I don't remember the exact words. He just said he wasn't going to allow it." Eckhart's understanding was that Hill was going to speak to the vendor, and that Plaintiffs could have the server "within a couple of weeks." The Server, however, never was provided. Instead, Plaintiffs used an old, used server. Eckhart testified that after the moving day, Plaintiffs attempted to get the Server on several occasions, but never were allowed to take the Server.

---

[1] The lease included payment for a package of computer equipment including the Server, which Plaintiffs were not allowed to take, and other computer equipment such as monitors, which Plaintiffs did get on the moving day.

Eckhart was asked how the old server worked for them, and she stated:

> We would lose work that we were working on constantly. It would shut down. It would - - the new - - it just didn't have memory. You would save something in one file to find it in another. It was just a Band-Aid to get us by for the couple weeks that turned into nine months.

At the hearing on the motion for contempt, Hill's deposition testimony concerning the corporate records was introduced. Hill testified that the corporate records were "stored on a safe, on top of a safe, basically just lined up," and that when the suit was filed the records were put in a box. Hill testified that as far as he knew, the records still were sitting in a box on the floor. Hill further stated that one of the Hill Boren, P.C. employees had boxed up the records. Hill was not sure which employee did this, but he stated it was either the office manager or someone under her supervision.

After the hearing, the Trial Court entered its Order For Contempt on November 6, 2017 finding and holding, *inter alia*:

> With regard to the failure to provide the corporate documents of Hill Boren PC, the Court cannot find that there was a willful disobedience by Mr. Hill regarding the withholding of corporate documents from Mr. Boren, one of the plaintiffs and a minority shareholder of HBPC. During the hearing, Defendants provided the corporate tax returns for HBPC. Within fourteen days from the entry of this Order, Plaintiffs and their counsel shall have the opportunity to inspect the remaining corporate documents which are located at the offices of Hill Boren, P.C. Counsel for Defendants shall also be present during this inspection.
>
> 2
>
> With regard to the copiers that were leased from R.J. Young Company, there were four copiers which were to be transferred to Plaintiffs for which Plaintiffs were then responsible for the payment of all costs associated with the lease of said copiers. Only three copiers were provided to Plaintiffs, and Plaintiffs seek reimbursement for the fourth copier for which they paid the invoice for four months. However, the Court cannot find that Mr. Hill willfully violated this provision of the Order. Indeed, there appears to have been at least an attempt to give the copier to the Plaintiffs. Although there is no finding of willful contempt, Defendants failed to comply with said Order, and Plaintiffs incurred damages in the

4

amount of $1,500 by paying the invoice on the fourth copier that Defendants kept in their possession. Accordingly, Plaintiffs are awarded a judgment against Defendants jointly and severely in the amount of $1,500 for which execution may issue.

3

With regard to the Copitraks system, the Order allowed Plaintiffs to take possession of the Copitraks equipment; however, Plaintiffs were not given the software for said equipment by Defendants which was necessary to operate the equipment. Pursuant to the Order, Plaintiffs assumed the financial responsibility for the payment of all expenses associated with the Copitraks system. The Court cannot find that there was willful disobedience on the part of Mr. Hill as there was a reasonable dispute as to all of the equipment that went with the Copitraks system. However, since the Plaintiffs paid for the entire Copitraks system which should have included the software, they are entitled to a judgment of $2,652.13 against Defendants jointly and severely for which execution may issue.

4

With regard to the server, the Order of January 9, 2017 specifically provides that:

> **Computers, software and computer equipment:** Defendants will allow Boren and Boyd to possess all of Hill Boren P.C.'s computers, software, and computer equipment necessary for Boren and Boyd to carry out their law practices. This would include all computers, computer software, and computer equipment used by the staff of Hill Boren, P.C. but not the computers from the office of T. Robert Hill or Tamara Hill. Along with this possession, Boren and Boyd will assume any expenses, liability, leases, and/or payments for these computers, computer software and computer equipment.

At the hearing on December 20, 2016, the server was specifically discussed by the parties, it was identified, and it would have to be provided with all of the other computers and software in order for them to operate as intended. On December 30, 2016, Plaintiffs went to the offices of Defendants to take possession of the computer equipment. Mr. Hill refused to provide the server. Any doubt regarding Mr. Hill's obligation to provide

5

the server along with the other computer equipment was removed by the entry of the Court's Order of January 9, 2017. The Order was unambiguous. The server was necessary for Plaintiffs to use the computers and equipment to carry out their law practice. Mr. Hill failed to comply with the Court's Order after January 9, 2017 and refused to comply, even after Plaintiffs filed their motion for contempt on February 17, 2017, through the date of the hearing on September 27, 2017. Plaintiffs have proved by a preponderance of the evidence that Mr. Hill willfully violated the Court's Order of January 9, 2017. Civil contempt occurs when a person fails to comply with a court order and an action is brought by a private party to enforce rights under the order that had been violated. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights. *Doe v. Board of Professional Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003). Mr. Hill, acting individually and on behalf of the corporation is in civil contempt of the Court's Order for his failure to provide the server to Plaintiffs. The server is now obsolete as Plaintiffs paid for it until they purchased their own server in July 2017. However, because of Mr. Hill's violation of the Court's Order, the Plaintiffs were damaged in the amount of $4,616. As Mr. Hill has the present ability to satisfy this judgment, Mr. Hill shall have fourteen days from the date of entry of this judgment to pay to Plaintiffs the amount of $4,616, or he shall report to the Madison County Jail and remain there until the judgment is satisfied.

5

Mr. Hill did not testify in his defense at the hearing on September 27, 2017, as he elected not to be present. The only testimony for Defendants came from Tamara Hill. Apparently, Defendants are now attempting to reopen the proof by submitting the deposition testimony of David Riggs, after the Court found Defendants in contempt on September 27, 2017. No evidence has been presented that Mr. Riggs could not be located or could not be present for trial. There was no subpoena for Mr. Riggs to appear on September 27, 2017. The Court has no way to judge the credibility of Mr. Riggs or interpret his emails. Mr. Hill had months to make copies or do whatever he needed to preserve information on the server. Mr. Hill did nothing. The Court declines to reopen the proof after it has ruled.

(footnotes omitted). Defendants appeal to this Court.

6

**Discussion**

Although not stated exactly as such, Defendants raise four issues on appeal: 1) whether they received proper notice of contempt; 2) whether the Trial Court erred in awarding damages where there was no finding of contempt; 3) whether the Trial Court erred in awarding damages with regard to the Server pursuant to Tenn. Code Ann. § 29-9-104; and, 4) whether the Trial Court erred in ordering that Plaintiffs be allowed access to corporate records.[2]

Our Supreme Court has given guidance with regard to contempt stating:

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton*, 88 Tenn. 334, 351–52, 12 S.W. 786, 791 (1890); *Churchwell v. Callens*, 36 Tenn. App. 119, 131, 252 S.W.2d 131, 136–37 (1952). An order is not rendered void or unlawful simply because

---

[2] Defendants attempt to raise another issue, which they state as: "Does the truth matter in the American civil justice system?" To the extent that this issue appears to assert that the answer to this question may be negative, the assertion is scurrilous. In their brief on appeal with regard to this issue, Defendants assert that Plaintiffs and their witnesses committed perjury. This allegation was first raised in Defendants' motion to alter or amend. The Trial Court denied this motion finding it to be not well taken without further discussion. Defendants are asking this Court to make a finding on an issue not raised at the hearing on the motion for contempt and not determined by the Trial Court. We decline to do so. *See Crossley Const. Corp. v. Nat. Fire Ins. Co. of Hartford* wherein we stated:

Except for some limited exceptions not applicable here, we will not consider issues, let alone claims, raised for the first time on appeal. *See City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn. 2004) (noting the general rule that "questions not raised in the trial court will not be entertained on appeal." (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983))).

*Crossley Const. Corp. v. Nat. Fire Ins. Co. of Hartford*, 237 S.W.3d 652, 656 (Tenn. Ct. App. 2007).

it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton*, 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens*, 36 Tenn. App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson*, 67 Tenn. (8 Baxt.) 1, 5 (1874). However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Howell v. Thompson*, 130 Tenn. 311, 323–24, 170 S.W. 253, 256 (1914). Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 247 (2d Cir.1972); *Hall v. Nelson*, 282 Ga. 441, 651 S.E.2d 72, 75 (2007); *Marquis v. Marquis*, 175 Md. App. 734, 931 A.2d 1164, 1171 (2007); *Cunningham v. Eighth Judicial Dist. Ct. of Nev.*, 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986); *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 643 S.E.2d 151, 154–55 (2007). The order must, therefore, be clear, specific, and unambiguous. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 471; *Long v. McAllister–Long*, 221 S.W.3d at 14.

Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of Dep't of Mental Retardation*, 424 Mass. 430, 677 N.E.2d 127, 137 (1997); *Ex parte Slavin*, 412 S.W.2d at 45. Orders need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988) (quoting *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.—Dallas 1979)). They must, however, leave no reasonable basis for doubt regarding their meaning. *Int'l Longshoremen's Ass'n, Local No. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); *Salt Lake City v. Dorman–Ligh*, 912 P.2d 452, 455 (Utah Ct. App.1996).

Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order

and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. *United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir.2001); *United States v. Young*, 107 F.3d 903, 907–08 (D.C. Cir. 1997). Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 251 (2d Cir. 2002); *Town of Virgil v. Ford*, 184 A.D.2d 901, 585 N.Y.S.2d 559, 560 (1992); *Greene v. Finn*, 153 P.3d at 951. Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991); *In re Leah S.*, 284 Conn. 685, 935 A.2d 1021, 1027 (2007); *City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis.2d 1, 539 N.W.2d 916, 924 (1995).

The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See Pass v. State*, 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); *Sherrod v. Wix*, 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 474. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943); *United States v. Phillips*, 19 F.3d 1565, 1576–77 (11th Cir. 1994). Most obviously, it differentiates between deliberate and unintended conduct. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. *Bryan v. United States*, 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids").

In the context of a civil contempt proceeding under Tenn. Code Ann. § 29–2–102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. *United States v. Ray*, 683 F.2d 1116, 1127 (7th Cir. 1982); *City of Dubuque v. Iowa Dist. Ct. for Dubuque County*, 725 N.W.2d 449, 452 (Iowa 2006); *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1074 (Utah 1988). Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R. App. P. 13(d) standards.

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). The court's decision is entitled to great weight. *Hooks v. Hooks*, 8 Tenn. Civ. App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25–26 (Tenn. Ct. App. 2004). This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly

10

consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

*Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-58 (Tenn. 2008) (footnotes omitted).

We first consider whether Defendants received proper notice of contempt. In *Bryan v. Leach*, this Court discussed the difference between civil contempt and criminal contempt stating:

As the Supreme Court has explained:

Contempts may be either criminal or civil in nature. Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket . . . ."

Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt.

11

*Black* [*v. Blount*], 938 S.W.2d [394] at 398 [(Tenn. 1996)] (citations omitted).

Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt. *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). "A civil contempt is one where a person refuses or fails to comply with an order of the court and punishment is meted out for the benefit of a party litigant." *Givler v. Givler*, 964 S.W.2d 902, 909 (Tenn. Ct. App. 1997) (*quoting Garrett v. Forest Lawn Mem'l Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)). Because the court's order fining Father $100 per day was designed to coerce Father to pay the amounts ordered, and because Father could avoid the fine and purge his contempt by obeying the court's orders, the finding of contempt was clearly civil contempt.

> After a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. In civil contempt, the imprisonment is meted out for the benefit of the party litigant.

*Ahern*, 15 S.W.3d at 79.

*Bryan v. Leach*, 85 S.W.3d 136, 157-58 (Tenn. Ct. App. 2001).

In the case now before us on appeal, Defendants were found to be in civil contempt, not criminal. Specifically with regard to the issue of notice of contempt, this Court has explained:

Civil contempt only requires that the contemnor be notified of the allegation and be given the opportunity to respond. *Black*, 938 S.W.2d at 398 (citing *State v. Maddux*, 571 S.W.2d, 819, 821 (Tenn. 1978)); *see also Pickern v. Pickern*, No. E2004–02038–COA–R3–CV, 2005 WL 711964, at *7 (Tenn. Ct. App. Mar. 29, 2005). Moreover, and significant to this issue, the safeguards afforded to one accused of criminal contempt are not

available to one accused of civil contempt. *See Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005).

*State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 611 (Tenn. Ct. App. 2006) (footnote omitted).

In their brief on appeal, Defendants argue that because the motion for contempt did not reference either Tenn. Code Ann. § 29-9-104 or Tenn. Code Ann. § 29-9-105, that this alleged deficiency rendered the notice insufficient. Defendants are mistaken. Defendants received notice that contempt was being sought and were given an opportunity to respond. As noted above, this is what is required for civil contempt. This issue is without merit.

We next consider whether the Trial Court erred in awarding damages where there was no finding of contempt. In its November 6, 2017 Order For Contempt, the Trial Court found that there was no willful contempt with regard to the failure to turn over corporate documents, the copier, and the Copitraks system.[3] The Trial Court, however, then awarded damages for the failure to turn over the copier and the Copitraks system. Absent a finding of willful contempt, damages for contempt are inappropriate. We, therefore, vacate the award of $1,500 for the copier and the award of $2,652.13 for the Copitraks system.

Next, we consider whether the Trial Court erred in awarding damages pursuant to Tenn. Code Ann. § 29-9-104 when Defendants were found in contempt for the failure to turn over the Server. With regard to this issue, Defendants argue in their brief on appeal that damages are not allowed under Tenn. Code Ann. § 29-9-104. Defendants cite to a pre-2011 version of the statute and case law construing it. The statute, however, was amended in 2011. Currently, Tenn. Code Ann. § 29-9-104 provides:

**29-9-104. Omission to perform act.**

(a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, the person may be imprisoned until such person performs it.

(b) The person or if same be a corporation, then such person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act or pays the damages ordered by the court.

---

[3] The Trial Court did find Defendants in willful contempt for the failure to turn over the Server, and we will discuss the Server separately below.

13

Tenn. Code Ann. § 29-9-104 (2012). Defendant's argument based upon a prior version of the statute is without merit.

Defendants also argue that the Trial Court erred in awarding damages for the failure to turn over the Server because they allege: "the Court had no evidence in the record of Hill's *present* ability to pay anything as Hill did not testify." (emphasis in original). Unfortunately for Defendants, "[t]he contemnor bears the burden of proving that he is unable to comply with the court's order at the time of the hearing." *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *11 (Tenn. Ct. App. Nov. 25, 2015), *no appl. perm. appeal filed*. Furthermore, we note that Defendants filed a notice of payment under protest on December 18, 2017 stating that they had paid the damages awarded for contempt directly to Boren & Boyd, PLC. The fact that payment was made both proves that Defendants had the ability to pay and makes this specific sub-issue moot. We find no error in the Trial Court's holding Defendants in willful contempt for failure to turn over the Server and awarding damages for this contempt.

Finally, we consider whether the Trial Court erred in ordering that Plaintiffs be allowed access to corporate records. We begin by noting that as a shareholder of Hill Boren, P.C., Boren has a statutory right to inspect corporate records. Tenn. Code Ann. § 48-26-101, *et seq*. Defendants do not argue in their brief on appeal that the Trial Court erred in ordering that Boren had the right to inspect corporate records. Rather, they argue that it was improper for the Trial Court "to allow a physical invasion of a corporation's headquarters where the petitioner seeking the invasion has failed to comply with the very order on which he seeks sanctions and where he has further failed to prove that he has any rights to continue as a shareholder."

First, we note that the Trial Court did not find contempt with regard to the corporate records. Second, the allegation that Plaintiffs have failed to comply with the order upon which they sought sanctions refers to the Trial Court's order of January 17, 2017, in which the Trial Court found and held, *inter alia*:

> Plaintiff, Ricky Boren is a shareholder of Hill Boren P.C., and as a shareholder he has requested Defendants to provide him access to or copies of the corporate documents of the company. As a shareholder under T.C.A. § 48-26-101 *et seq.* Mr. Boren has a right to inspect and copy these documents. Based on statements by counsel during the hearing on January 11, 2017, most of these records have already been provided through the mechanism of copying the files from the Server of the company. However, to the extent the minutes of shareholder meetings and minutes of meetings of the board of directors have not been furnished, Defendants shall furnish those minutes or in the event there are no minutes, will inform Plaintiffs

14

that they do not exist. After reviewing the documents contained from the Server, if there are other corporate records which have not been produced, then Mr. Boren shall specifically identify those documents which are missing, and they will be produced.

Defendants assert that Boren did not specifically identify any missing documents and, thus, has not complied with the Trial Court's order. In their brief on appeal, Plaintiffs assert that they are unaware of what corporate documents exist and, therefore, specifically identifying documents is difficult at best. Hill's deposition testimony regarding the corporate records was introduced at the hearing on the motion for contempt. Hill testified that the corporate records were "stored on a safe, on top of a safe, basically just lined up," and that when the suit was filed the records were put in a box. Hill testified that as far as he knew, the records still were sitting in a box on the floor. As a shareholder, Boren has the right to inspect these corporate records whether he can specifically identify them without seeing them or not.

Furthermore, despite Defendants' assertion that it has not been determined whether Boren has "any rights to continue as a shareholder," Boren has the right to inspect corporate records pertinent to the time period during which he undisputedly was a shareholder. We find no error in the Trial Court's order allowing Plaintiffs to inspect the corporate documents located at the offices of Hill Boren, P.C.

Given all of the above, we vacate that portion of the Trial Court's November 6, 2017 Order For Contempt awarding damages for the failure to turn over the copier and for the failure to turn over the Copitraks. We affirm the remainder of the November 6, 2017 order.

## Conclusion

The judgment of the Trial Court is vacated as to the award of damages in the amount of $1,500 with regard to the copier and as to the award of damages in the amount of $2,652.13 with regard to the Copitraks. The remainder of the judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed one-half against the appellants, Hill Boren, P.C. and T. Robert Hill, and their surety; and one-half against the appellees, Ricky L. Boren on behalf of Hill Boren, P.C.; Ricky L. Boren, individually; and Jeffrey P. Boyd.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

15