FILED
04/12/2019
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 19, 2019 Session

## PATRICIA GAY PATTERSON LATTIMORE v.
## JAMES S. LATTIMORE, JR.

**Appeal from the Circuit Court for Williamson County**
**No. 93699    Michael W. Binkley, Judge**

_____

### No. M2018-00557-COA-R3-CV

_____

This appeal arises from a post-divorce proceeding wherein the wife filed a petition requesting that the trial court hold the husband in civil contempt due to his noncompliance with the alimony provision in the parties' marital dissolution agreement ("MDA") and enter a judgment in favor of the wife representing the alimony arrearage and statutory interest. Following a bench trial, the trial court dismissed the wife's petition without entering a monetary judgment against the husband, upon finding that although the husband had violated the alimony provision of the MDA, his failure to pay was not willful. The trial court also denied the wife's request for attorney's fees. Having determined that the evidence preponderates against the trial court's finding, we conclude that the husband's failure to comply with the alimony provision was willful. Upon further determination that the trial court erred in dismissing the wife's petition for civil contempt and a monetary award, we reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

David W. Garrett and Jacob T. Thorington, Franklin, Tennessee, for the appellant, Patricia Gay Patterson Lattimore.

Angela Hoover, Franklin, Tennessee, for the appellee, James S. Lattimore, Jr.

# OPINION

## I. Factual and Procedural Background

The parties, James S. Lattimore, Jr. ("Husband") and Patricia Gay Patterson Lattimore ("Wife"), were divorced on September 6, 1994, in the Williamson County Circuit Court ("trial court"). In the divorce decree, the trial court approved and incorporated the parties' MDA. As relevant to the current appeal, the MDA provides as follows:

> The Husband will pay to the Wife the sum of $3,500.00 per month as alimony in futuro until June, 1996, at which time said amount shall increase to $4,000.00 per month, or until the Wife's death or remarriage. Said amounts shall be paid directly to the Wife on the first of each month.
>
> * * *
>
> In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, he or she shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

(Paragraph numbering omitted.)

In a previous post-divorce action, Wife filed a "Petition for Criminal Contempt" in the trial court on June 5, 2009, alleging that Husband had failed to comply with the MDA due to one missed alimony payment in May 2009, failed to provide medical insurance for Wife, and failed to provide documentation of the required life insurance policy identifying Wife as the beneficiary. Wife requested that Husband be (1) held in criminal contempt; (2) ordered to reimburse her $4,000.00 for the May 2009 alimony payment, in addition to any further arrearage to accumulate prior to the final hearing; (3) ordered to reimburse her for medical insurance payments; and (4) ordered to provide evidence that he had maintained the life insurance policy. Husband filed an answer, denying that he willfully failed to comply with the MDA's provisions. According to Husband, he was unable to make his alimony payments to Wife because his health had declined, he was unable to work on a full-time basis, and he had retired. Husband further denied that he had failed to provide medical insurance for Wife or that he was required to maintain a life insurance policy with Wife as beneficiary.

Following a bench trial conducted on January 12, 2012, the trial court found that Husband had not paid alimony to Wife since April 2009 and that his failure to pay was willful. The trial court also determined that Husband had "purposely transferred major

- 2 -

assets into the name of his current wife, Joan Carol (Joey) Lattimore, in an attempt to avoid paying his alimony and other financial obligations as required by the [MDA]."[1] The trial court ultimately found Husband guilty of one count of criminal contempt for failure to provide proof of the life insurance policy, thirty-three counts of criminal contempt due to his failure to pay alimony as required by the MDA, and thirty-six counts of criminal contempt for Husband's failure to provide Wife's medical insurance.

In this prior action, the trial court sentenced Husband on August 17, 2012, to ten days' incarceration for failing to pay alimony, ten days' incarceration for failing to provide medical insurance for Wife, and ten days' incarceration for failing to maintain a life insurance policy with Wife designated as the beneficiary. The aforementioned sentences were to be served consecutively for a total of thirty days. The trial court also entered a monetary judgment in favor of Wife, representing Husband's unpaid arrearages and statutory interest that had accumulated through August 16, 2012. Determining that by the time of trial Husband had failed to pay thirty-three monthly alimony payments, the trial court granted a judgment against Husband in the amount of $132,000.00 plus statutory interest. Additionally, upon its finding that Husband had failed to provide Wife with medical insurance or reimburse Wife for the thirty-six premium payments she had made, the trial court entered a judgment in favor of Wife for $6,120.00 plus statutory interest. The trial court further awarded to Wife her reasonable attorney's fees in the cause. Husband subsequently filed a motion for new trial, which was denied by the trial court.

Husband appealed the trial court's judgment to this Court. On appeal, this Court reversed all but three counts of contempt upon a determination that Husband was only provided with notice of three counts of criminal contempt−one count for failure to pay alimony, one count for failure to provide medical insurance for Wife, and one count for failure to provide documentation to Wife evincing the requisite life insurance policy. *See Lattimore v. Lattimore*, No. M2012-02674-COA-R3-CV, 2013 WL 5773418, at *4-5 (Tenn. Ct. App. Oct. 24, 2013), *perm. app. denied but designated not for citation* (Tenn. Apr. 11, 2014) ("*Lattimore I*").[2] This Court affirmed the trial court's judgment as to the counts of criminal contempt, determining that sufficient evidence supported the trial court's findings beyond a reasonable doubt. *Id.* at *6. Regarding the sufficiency of the evidence, this Court explained:

---

[1] Husband's current wife is referred to as both "Joan" and "Joey" throughout the record. For the sake of consistency, we will refer to her as "Joan" throughout this Opinion.

[2] An opinion designated as not for citation pursuant to Tennessee Supreme Court Rule 4(E) shall not be cited in a trial or appellate court decision "except when the opinion is the basis for a claim of res judicata, collateral estoppel, law of the case, or to establish a split of authority." In the present case, Wife presents an argument that the trial court should have applied the law of the case doctrine. We therefore determine the facts and procedural history of *Lattimore I* to be relevant to the current appeal.

The trial court found Husband guilty of criminal contempt under Tennessee Code Annotated section 29-9-102(3), which requires "*willful* disobedience" with a court order. Tenn. Code Ann. § 29-9-102(3) (2012) (emphasis added). The trial court relied on evidence of Husband's extravagant lifestyle to reach the conclusion that he had the financial ability to comply with the MDA. Husband argues that although his lifestyle appears to indicate that he is financially stable, he is actually supported by his current spouse, Joan, and her financial success. He contends that his failure to comply with the MDA was not willful and he therefore cannot be convicted of criminal contempt under the statute. We disagree. We think that the evidence in the record is more than sufficient to find that Husband had the ability to pay his financial obligations under the MDA.

The trial court affirmatively found beyond a reasonable doubt that Husband purposefully transferred major assets to Joan in an attempt to avoid his financial obligations under the MDA. At trial, Husband readily admitted that he transferred over $1,600,000 in profits from the 2003 sale of refurbished property to Joan. That money was used to purchase the couple's current home, which has been valued at $1,296,100. Husband also admitted to setting up a shell corporation, of which Joan is the sole owner, for ownership of a forty-five foot recreational vehicle the Husband purchased in 1999 for $650,000. In 2006, Husband even explicitly stated in a letter to Wife that if she would not accept an offer to end his alimony obligations, he would be left with no choice but to transfer his assets to Joan.

The trial court found additional evidence that Husband and Joan enjoyed an extravagant lifestyle, even after Husband claimed he was in financial trouble in 2004. Since 2004, Husband has taken trips to Vietnam, Australia, Indonesia, Italy, and Mexico, though Husband testified that a portion of those trips was reimbursed by a company that paid Husband to lead motorcycle tours. Husband and Joan also took trips that were not reimbursed. In 2009, they vacationed in Italy. For the majority of 2011, Husband and Joan traveled throughout the United States, visiting Arizona, Colorado, Oregon, California, Alabama, and Ohio. The couple also enjoyed an extensive wine collection. In 2009, Husband charged a purchase of $1,209.60 at a California winery to a credit card in his name only. Husband claims that his luxurious lifestyle has been wholly supported [by] Joan. However, the trial court found that Husband was not a credible witness based on his inconsistent testimony. The trial court affirmatively found that Husband had the ability to make his alimony

payments and willfully declined to do so. The court found specifically that Husband transferred major assets to Joan in an attempt to avoid his obligations under the MDA. We think that, viewing the evidence in the light most favorable to the prosecution, the evidence more than supports the trial court's findings beyond a reasonable doubt. We therefore affirm.

*Id*. This Court further awarded to Wife her attorney's fees incurred during the appeal. *Id*. at *7.

Wife commenced the instant action by filing a "Petition for Civil Contempt and for Judgment" on June 19, 2014, alleging that Husband had accrued a "new, additional alimony arrearage." According to Wife's petition, Husband had willfully failed to comply with the spousal support provision of the MDA because he had failed to pay his alimony obligation since September 2012. Wife specifically alleged that Husband had failed to tender twenty-two monthly alimony payments by the time of the petition's filing. Wife requested that the trial court award her a judgment against Husband, constituting the alimony arrearage accrued from September 2012 through the petition's filing in June 2014, which she stated totaled $88,000.00, plus statutory interest. Wife also requested a monetary judgment equal to the amount of any additional alimony arrearage that would accrue prior to the final hearing, as well as an award of attorney's fees. Wife further petitioned that she "be able to use this judgment to execute upon [Husband's] assets in the event [Husband] fails to purge himself of contempt."

Concerning remand under the prior appeal, Wife filed a motion on March 16, 2015, requesting that the trial court schedule a date for Husband to appear before the trial court "to serve his thirty (30) days of incarceration for the three counts of Criminal Contempt." Wife also requested that the trial court enter a judgment for Wife's reasonable attorney's fees incurred during the appeal, which had been awarded by this Court. Wife concomitantly filed an affidavit prepared by her attorney, including an itemized statement of his professional services, delineating a total claim of $12,365.86 in attorney's fees and expenses incurred during the appeal. Husband filed a response, asserting that "due to his physical condition, and health considerations," his thirty-day sentence of incarceration would "have a direct and significant impact on his health and wellbeing" and that probation would "serve the ends of justice and the best interest of both the public and [Husband]."

The trial court subsequently entered an order requiring Husband to report to the Williamson County Jail "no later than April 30, 2015," in order to serve his thirty-day sentence of incarceration. The trial court further directed that Husband appear prior to that date "to be evaluated by the medical staff at the jail to determine if there is any medical basis for him not to be incarcerated." On July 17, 2015, the trial court entered an

order, awarding to Wife $13,250.86, which included $12,365.86 in attorney's fees and expenses incurred during the appeal plus pre-judgment interest in the amount of $885.00.

The trial court conducted a bench trial on September 15, 2016, regarding Wife's 2014 petition seeking a civil contempt determination and a monetary judgment against Husband. On October 21, 2016, the trial court entered an order directing each party to submit proposed findings of fact and conclusions of law.

On March 2, 2018, the trial court entered a "Memorandum Order," memorializing both the April 4, 2016 and September 15, 2016 hearings. The trial court found that the divorce decree, which incorporated the MDA, was a lawful order and that the alimony provision of the MDA was "sufficiently specific and clear." Based upon Wife's testimony that Husband had failed to pay alimony to Wife from September 2012 through the date of trial on September 15, 2016, the trial court also found that Husband had violated the alimony provision of the MDA. However, the trial court determined that Husband did not have the ability to pay his alimony obligation and that Husband's failure to pay his spousal support obligation to Wife was not willful. The trial court therefore dismissed Wife's petition. Wife timely appealed.

## II. Issues Presented

Wife presents the following issues for review, which we have restated slightly:

1.      Whether the trial court erred by declining to find Husband in civil contempt upon the court's determination that Husband's failure to comply with the alimony provision of the MDA was not willful.

2.      Whether the trial court erred by declining to enter a judgment in favor of Wife in the amount of Husband's unpaid alimony obligation that had accrued since September 2012.

3.      Whether the trial court erred by denying Wife's request for an award of her attorney's fees accrued during the trial court proceedings related to the instant action.

4.      Whether Wife should be awarded her attorney's fees on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.

2000).  "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).  We review questions of law *de novo* with no presumption of correctness.  *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"A trial court's use of its contempt power is within its sound discretion and will be reviewed by an appellate court under an abuse of discretion standard."  *McLean v. McLean*, No. E2008-02796-COA-R3-CV, 2010 WL 2160752, at *3 (Tenn. Ct. App. May 28, 2010) (citing *Outdoor Mgmt., LLC v. Thomas,* 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)).  "[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party."  *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Mar. 12, 2007) (internal citations omitted).  Likewise, this Court reviews a trial court's award of attorney's fees according to an abuse of discretion standard.  *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

## IV.  Civil Contempt of Court

Wife contends that the trial court erred by declining to find Husband in civil contempt upon the court's determination that Husband's failure to pay his alimony obligation was not willful.  Wife makes two alternative arguments.  First, Wife argues that the trial court erred by failing to apply the "law of the case" doctrine to the present contempt proceedings.  Second, Wife argues that the evidence presented at trial demonstrated that Husband's failure to pay his alimony obligation was willful because Husband had the ability to pay the spousal support.  We agree with Wife that the evidence presented preponderates in favor of a finding that Husband's failure to comply with his alimony obligation was willful.

Concerning contempt of court, Tennessee Code Annotated § 29-9-102 (2012) provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

(1)     The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2)     The willful misbehavior of any of the officers of such courts, in their official transactions;

(3)     The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4)     Abuse of, or unlawful interference with, the process or proceedings of the court;

(5)     Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6)     Any other act or omission declared a contempt by law.

"Contempts may be criminal or civil in nature depending on whether the purpose of the contempt is to coerce or to punish." *State v. Turner*, 914 S.W.2d 951, 954 (Tenn. Crim. App. 1995). This Court has previously distinguished between the two types of contempt of court as follows:

> Civil contempt is intended to benefit a litigant while criminal contempt is punishment for an offense against the authority of the court. Civil contempt is imposed to compel compliance with an order, and parties in contempt may purge themselves by compliance. Criminal contempt, on the other hand, is punishment for failing to comply with an order, and the contemptuous party cannot be freed by eventual compliance.

*Duke v. Duke*, No. M2013-00624-COA-R3-CV, 2014 WL 4966902, at *30 (Tenn. Ct. App. Oct. 3, 2014) (quoting *Sherrod v. Wix,* 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992)).

In the present action, it is undisputed that the contempt proceedings were civil in nature. Regarding civil contempt proceedings, our Supreme Court has elucidated in pertinent part:

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton*, 88 Tenn. 334, 351-52, 12 S.W. 786, 791 (1890); *Churchwell v. Callens*, 36 Tenn. App. 119, 131, 252 S.W.2d 131, 136-37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton*, 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens*, 36 Tenn. App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson*, 67 Tenn. (8 Baxt.) 1, 5 (1874). However, an order entered without either subject matter jurisdiction or jurisdiction over the parties is void and cannot provide the basis for a finding of contempt. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *Howell v. Thompson*, 130 Tenn. 311, 323-24, 170 S.W. 253, 256 (1914). Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 247 (2d Cir. 1972); *Hall v. Nelson*, 282 Ga. 441, 651 S.E.2d 72, 75 (2007); *Marquis v. Marquis*, 175 Md. App. 734, 931 A.2d 1164, 1171 (2007); *Cunningham v. Eighth Judicial Dist. Ct. of Nev.*, 102 Nev. 551, 729 P.2d 1328, 1333-34 (1986); *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 643 S.E.2d 151, 154-55 (2007). The order must, therefore, be clear, specific, and unambiguous. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d [465,] 471 [(Tenn. 2003)]; *Long v. McAllister-Long*, 221 S.W.3d [1,] 14 [(Tenn. Ct. App. 2006)].

* * *

The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See Pass v. State*, 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); *Sherrod v. Wix*, 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 474. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. *Spies v. United States*, 317 U.S. 492, 497, 63 S. Ct. 364, 87 L. Ed. 418 (1943); *United States v. Phillips*, 19 F.3d 1565, 1576-77 (11th Cir. 1994). Most obviously, it differentiates between deliberate and unintended conduct. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d [602,] 612 [(Tenn. Ct. App. 2006)]. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. *Bryan v. United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998); *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids").

In the context of a civil contempt proceeding under Tenn. Code Ann. § 29-[9]-102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. *United States v. Ray*, 683 F.2d 1116, 1127 (7th Cir. 1982); *City of Dubuque*

- 10 -

*v. Iowa Dist. Ct. for Dubuque County*, 725 N.W.2d 449, 452 (Iowa 2006); *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1074 (Utah 1988). Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R. App. P. 13(d) standards.[3]

> After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). The court's decision is entitled to great weight. *Hooks v. Hooks*, 8 Tenn. Civ. App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004).

*Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-58 (Tenn. 2008) (footnotes omitted).

"For the court to find that [an obligor's] failure to pay alimony and child support was contemptuous, the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was willful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000); *see also Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006) ("The Supreme Court in *Ahern* was quite specific in holding that willfulness and ability are two distinct findings and that both must be found in order to hold that a failure to pay child support is contemptuous.").

Regarding the burden of proof in civil contempt actions, this Court has explained:

> To find civil contempt in a case such as this, the petitioner must establish that the defendant has failed to comply with a court order. *Chappell v. Chappell,* 37 Tenn. App. 242, 261 S.W.2d 824, 831 (Tenn. 1952). Once done, the burden then shifts to the defendant to prove inability to pay. *Id.* If the defendant makes a prima facie case of inability to pay, the burden will then shift to the petitioner to show that the respondent has the ability to

---

[3] Pursuant to Tennessee Rule of Appellate Procedure 13(d), this Court reviews factual findings, such as the element of willfulness in civil contempt, *de novo* upon the record unless the evidence preponderates against those findings.

pay. *State ex rel. Moore v. Owens,* No. 89-170-11, 1990 WL 8624 (Tenn. Ct. App. February 7, 1990) (reversing a finding of contempt upon holding that respondent's testimony of inability to pay was unimpeached and uncontradicted by the petitioner).

*State ex rel. Murphy v. Franks*, No. W2009-02368-COA-R3-JV, 2010 WL 1730024, at *3 (Tenn. Ct. App. Apr. 30, 2010) (other internal citations omitted).

The pertinent portion of the parties' MDA provides as follows:

> The Husband will pay to the Wife the sum of $3,500.00 per month as alimony in futuro until June, 1996, at which time said amount shall increase to $4,000.00 per month, or until the Wife's death or remarriage. Said amounts shall be paid directly to the Wife on the first of each month.

Wife requested criminal contempt in her 2009 petition seeking a finding of contempt of court against Husband. During that proceeding, the record reflects that the trial court found that Husband had "purposely transferred major assets into the name of his current wife, Joan Carol (Joey) Lattimore, in an attempt to avoid paying his alimony and other financial obligations as required by the [MDA]." The trial court further found that during the relevant time addressed by the contempt petition, Husband had taken trips to several countries and states across the United States, maintained an extensive wine collection, and made a purchase on his credit card from a winery for $1209.60. The trial court in *Lattimore I* determined that Husband was guilty of criminal contempt due to, *inter alia*, his willful failure to comply with the alimony obligation in the MDA. *See Lattimore,* 2013 WL 5773418, at *6. This Court affirmed the trial court's judgment as to the single count for which Husband had received sufficient notice, determining that the evidence proffered supported the trial court's findings beyond a reasonable doubt. *Id.*

The present action involves a time period subsequent to the previous case and a different form of contempt. In the instant petition, Wife alleged that Husband had committed civil contempt when he did not pay his alimony obligation beginning September 2012 and continuing for several months thereafter. In the case at bar, the trial court dismissed Wife's petition seeking civil contempt and a monetary judgment against Husband upon its determination that the evidence preponderated against a finding that Husband's failure to pay his alimony obligation to Wife was willful. Upon our thorough review of the record, we disagree with this determination.

During trial, the parties presented certain evidence proffered in the previous action, which the trial court again considered in the current action regarding Husband's transfer of assets to his current wife, Joan. The trial court, *inter alia*, entered as exhibits letters that Husband had written and transmitted to Wife. One letter reflected that in

- 12 -

March 2004, Husband offered to Wife a settlement of $250,000.00 in exchange for cessation of any further alimony obligation, which settlement Wife declined. The trial court found that beginning in January 2006, Husband initiated a series of letters "threatening Wife" that she would receive no alimony payments after September 2009. In his January 16, 2006 letter, Husband again offered that they "settle everything" for $130,000.00, which represented the remaining balance of his initial offer. According to Wife, she again declined his offer. In a subsequent letter, Husband stated: "The offer I made to you in my last letter is all that I propose to ever do." Husband proceeded to inform Wife that if an agreement could not be reached, he would have "no choice but to put [him]self and [his] remaining assets beyond [Wife's] and [her] lawyer's reach." Husband additionally stated: "If that means transferring all my assets to a trust for Joey [Joan] and moving to San Marino or Costa Rica for the rest of my life, that's what I will do."

In correspondence dated December 24, 2007, Husband informed Wife that the assets he had reserved for payment of his spousal support obligation would be depleted by the fall of 2009. Husband further stated that "[m]ost of [his] other assets have been transferred, or are in the process of being transferred directly to Joey [Joan], or to a trust set up for her benefit, and for the education of Jay, Jack and Kain." Husband also indicated as follows: "I trust you can appreciate and understand that the ride you have enjoyed for the past 15 years is finally coming to an end…..unfortunately out of necessity."

The evidence reflects that on June 16, 2003, Husband sold his home, which had been titled solely in his name, for $2,350,000.00. Husband testified during trial in the instant action that he owed approximately $600,000.00 regarding the home loan at the time of the sale. Husband related that after paying the respective debt on the real property, real estate commissions, and closing costs, he received approximately $1,609,000.00 upon sale of the home. Husband further admitted that he transferred the net proceeds of the sale to Joan while knowing that he had an alimony obligation. According to Husband, the transfers were made spanning three years via payments on the construction expenses of the new home his spouse and he were building. Although Husband's name initially appeared on the deed to the real property concerning the new home, Husband quitclaimed his interest in the property to Joan on July 11, 2006, prior to sending the letter by which Husband informed Wife that he had transferred title. In the current action, the trial court determined that Husband had admitted to transferring approximately $1,100,000.00 to Joan from 2006 to 2009 while acknowledging that he had a continuing alimony obligation to Wife. The trial court also found that at the time of the transfer, Husband was making his alimony payments.

With reference to events occurring following the filing of Wife's current petition seeking civil contempt, the trial court found that Husband's current wife had traded a

Cadillac, for which she had received a trade-in value of $6,000.00, in purchasing a new Buick SUV, valued at approximately $40,000.00. The trial court further found that "the proof showed the car was not financed and the parties paid cash." Although initially denying that he questioned Joan about her money, Husband speculated that the cash for the vehicle's purchase could have originated from an inheritance she received. Husband provided the trial court with no documentation regarding Joan's inheritance or the means by which she had purchased the vehicle.

In the final order entered in the case at bar, the trial court found that Husband and P.K., who Husband identified as his current wife's friend, had made "extensive charges" on Husband's American Express credit card account. The record established that Joan was not a user on this credit account. According to Husband, he had allowed P.K. to have signatory privileges on his American Express account for several years. Husband related that P.K. had received a sizeable settlement following her divorce but that she had no established credit. Husband further explained that P.K. typically would make purchases using his credit account and that she would pay for those charges. The trial court also determined that from November 2013 through November 2016, P.K. had incurred several charges exceeding $500.00 each by using Husband's American Express credit account, with the combined charges totaling $143,075.00. During the same time frame, the credit card statements evinced a total of $342,960.00 in payments made toward Husband's credit card account balance. According to the trial court, Husband testified that P.K. continued incurring charges using his credit account until Joan requested the statements during the discovery phase of the case. Husband claimed that Joan's request was not related to P.K.'s obtaining her own credit account.

The trial court found that Husband's income primarily was derived from social security benefits and veteran's administration benefits. Husband, who previously had worked as a certified public accountant, had not been employed fulltime since his retirement in 1996 following disagreements with other partners in his firm. According to Husband, he occasionally prepared income tax returns for his friends and was paid $3,000.00 to $4,000.00 per year by P.K. to handle her financial affairs. Additionally, Husband had driven a motorcoach for a winery, earning $100.00 per day for seventy-two days of work in 2011 or 2012.

Also concerning his income, Husband testified that in 2014 he received $15,639.00. For prior years, his 2013 income was $8,200.00, and in 2012, his income was $14,599.00. Husband projected his 2015 income to be similar to that received in 2014. Based on the evidence, the trial court determined that Husband did not have sufficient income to pay his monthly alimony obligation. According to Husband, he had medical issues that prevented him from working. However, Husband presented no medical testimony or documentation regarding his medical conditions. Husband described using a "sleep ap machine" at night to treat his sleep apnea and snoring.

Moreover, Husband detailed his prescriptions for Losartan, Lasix, potassium pills, and two additional medications. He further related that he had undergone skin cancer removal procedures, worn hearing aids, and suffered from a lung condition resulting from exposure to "Agent Orange" while in Vietnam. According to Husband, this lung condition caused Husband to experience trouble breathing "with any kind of exertion."

The trial court concluded that the divorce decree adopting the parties' agreed MDA was a lawful order and that the order was "sufficiently specific and clear." Relying on Wife's testimony, the trial court determined that Husband had violated the court order requiring him to pay spousal support to Wife in the amount of $4,000.00 per month. We note that Husband has not disputed that he failed to pay alimony to Wife or that he knew of his ongoing spousal support obligation. However, based upon its factual findings and determinations, the trial court did not calculate the total amount of alimony arrearage that Husband owed to Wife.

Our review indicates that although Husband asserted that his total income for 2014 was $15,639.00, an examination of Husband's credit card statements reflects that Husband made purchases, excluding those purchases made by P.K., totaling significantly more than his income reported for 2014. Moreover, Husband's American Express statements demonstrate that significant, up-to-date payments were made concerning the credit account each month. All payment histories identify Husband as the cardmember making the payment. Notwithstanding, Husband contended that American Express lists the primary account holder as making the payment regardless of whether the payment originated from P.K. or Husband. Husband proffered no documentary evidence establishing from which bank account each payment originated other than his testimony that P.K.'s charges were paid from P.K.'s account. Based on such evidence, the trial court found that Husband and P.K. had incurred extensive charges on Husband's American Express credit card. As reflected in his credit card statements, the following is an illustrative sample of charges Husband incurred during the time he contends he was unable to pay his spousal support obligation:

| Date | Merchant | Purchase Amount |
|---|---|---|
| January 30, 2014 | Bloodworth Motorcycle in Nashville | $2,615.51 |
| March 17, 2014 | La Z Boy Furniture | $2,651.48 |
| July 11, 2014 | Brassfield Winery | $1,099.93 |
| September 13, 2014 | Brentwood Jewelry | $868.54 |
| December 7, 2014 | Bose Corp. Web Store | $1,201.70 |

Upon a thorough review of the record, we determine that the evidence preponderates against the trial court's determination that Husband's failure to comply with the alimony provision in the MDA was not willful. We note that this Court has

- 15 -

determined that "'[w]here an alleged contemner . . . has voluntarily and contumaciously brought on himself disability to obey an order or decree, he cannot avail himself of a plea of inability to obey as a defense to a charge of contempt.'" *Mowery v. Mowery*, 363 S.W.2d 405, 407 (Tenn. Ct. App. 1962) (quoting *Bradshaw v. Bradshaw*, 133 S.W.2d 617, 619 (Tenn. Ct. App. 1939) (additional internal citations omitted). Husband created the situation causing his alleged inability to pay by transferring significant assets of at least $1,100,000.00 to his current wife. Husband's pattern of spending many thousands of dollars in a year on his credit card and paying for those charges demonstrates that he had significant assets available and could have paid his alimony obligation. We therefore determine that Husband had the ability to pay support.

Furthermore, the evidence preponderates in favor of a determination that Husband's failure to pay his spousal support obligation was intentional and voluntary. While Husband had the assets available to him to pay his spousal support obligation, he chose not to do so. We therefore determine that Husband's failure to pay was willful and that he had the ability to pay spousal support.

We therefore reverse the trial court's judgment upon concluding that Husband's failure to comply with the alimony provisions of the parties' MDA was willful and that Husband had the ability to pay spousal support. We further determine that the trial court predicated its contempt adjudication on a clearly erroneous assessment of the evidence. *See In re Estate of Greenamyre*, 219 S.W.3d at 886. As such, we conclude that the trial court erred by declining to find Husband in civil contempt of court for his failure to comply with the alimony provision of the MDA. We therefore remand this matter to the trial court for entry of an order granting Wife's petition for civil contempt and for determination of an appropriate sanction therefor. Because we have determined that the evidence presented during the current action preponderates in favor of a finding that Husband's failure to comply with the MDA's alimony provisions was willful and that he had the ability to pay, Wife's issue concerning application of the law of the case doctrine is pretermitted as moot.

## V. Monetary Judgment

Wife further contends that the trial court erred by failing to enter a monetary judgment in her favor against Husband representing the alimony arrearage and statutory interest that had accrued since September 2012. Husband argues that Wife should not be awarded past-due alimony absent a finding by the trial court of civil contempt. We agree with Wife that the trial court erred by failing to enter a monetary judgment in Wife's favor.

Tennessee Code Annotated § 36-5-121(o) (2017) provides: "Any order of alimony that has been reduced to judgment shall be entitled to be enforced as any other

judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state." Additionally, "a contempt finding is not a condition precedent to enforcement of the court's order." *Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708, at *6 (Tenn. Ct. App. Feb. 19, 2013). Wife included in her petition a request that the trial court enter a judgment against Husband for any unpaid alimony arrearage and statutory interest that had accrued. Having found that the divorce decree was a lawful order, that the alimony provision was sufficiently clear, and that Husband had violated the alimony provision of the MDA, the trial court nonetheless dismissed Wife's petition without entering a monetary judgment in her favor.

Significantly, Husband admits having never filed a petition to modify or terminate his alimony obligation. It is undisputed that Husband failed to comply with his alimony obligation as agreed upon in the parties' MDA incorporated into the divorce decree. Upon a thorough review of the record, we conclude that Wife is entitled to a judgment representing Husband's accrued alimony arrearage. We therefore remand this cause to the trial court for calculation of Husband's alimony arrearage amount, calculation of post-judgment interest, and entry of a judgment for such amounts in favor of Wife.

## VI. Award of Attorney's Fees

Wife contends that the trial court erred by failing to award her the amount of reasonable attorney's fees and expenses she incurred during the trial court proceedings in this action. Wife also requests an award of reasonable attorney's fees incurred during this appeal. Concerning enforcement and attorney's fees, the parties' MDA provides in pertinent part:

> In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, he or she shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

Tennessee generally adheres to the "American Rule" for recovery of attorney's fees, under which "attorneys' fees are not recoverable in the absence of a statute or contract *specifically* providing for such recovery . . . ." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)). As our Supreme Court has explained:

> Our courts long have observed at the trial court level that parties are contractually *entitled* to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees. In such cases, the trial court does not have the

discretion to set aside the parties' agreement and supplant it with its own judgment.  See Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005) ("A court 'cannot under the guise of construction make a new and different contract for the parties.'") (quoting Memphis Furniture Mfg. Co. v. Am. Cas. Co., 480 S.W.2d 531, 533 (Tenn. 1972)).  The sole discretionary judgment that the trial court may make is to determine the amount of attorney's fees that is reasonable within the circumstances.

The same is and must be true of our appellate courts.  A marital dissolution agreement is a contract and as such is subject to the rules governing construction of contracts.  Barnes [v. Barnes], 193 S.W.3d [495,] 498 [(Tenn. 2006)] (citing Johnson [v. Johnson], 37 S.W.3d [892,] 896 [(Tenn. 2001)]).  Absent fraud, mistake, or some other defect, our courts are required to interpret contracts as written, giving the language used a natural meaning.  U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386-87 (Tenn. 2009).  This axiomatic rule does not change or lose its force because the parties to an agreement are before an appellate court.  Indeed, one of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves.  Dubois v. Gentry, 182 Tenn. 103, 184 S.W.2d 369, 371 (1945); see also Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975) ("The courts, of course, are precluded from creating a new contract for the parties.").

It necessarily follows that if an agreement is valid and enforceable, it must be enforced as written regardless of whether the parties are before a trial court or an appellate court.  Accordingly, we hold that the Court of Appeals has no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party.

*Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017) (other internal citations omitted).  Thus, if the parties' MDA provides for attorney's fee awards under certain circumstances, those provisions must be enforced.

The parties' MDA clearly provides for an award of attorney's fees to a party who institutes a legal action to enforce the MDA's provisions.  Because Wife has instituted such an action and prevailed in enforcing the MDA, we determine that Wife is entitled to an award of attorney's fees incurred during the trial court proceedings pursuant to the applicable contract provisions.  As such, we reverse the trial court's denial of attorney's fees. Additionally, Wife has requested an award of attorney's fees on appeal.  For the same reasons, we conclude that, pursuant to the parties' MDA, Wife is entitled to an

award of reasonable attorney's fees incurred during the appeal. We accordingly remand this matter to the trial court for an evidentiary hearing to determine the amount of reasonable attorney's fees due to Wife pursuant to the parties' MDA.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's determination that Husband's failure to comply with his alimony obligation was not in civil contempt of court, its denial of Wife's request for a monetary judgment constituting Husband's alimony arrearage and post-judgment interest, and its denial of Wife's request for attorney's fees. We further grant to Wife an award of reasonable attorney's fees incurred during this appeal. We remand this cause to the trial court for an evidentiary hearing regarding an award of Wife's attorney's fees, the calculation of Husband's alimony arrearage and post-judgment interest, the appropriate sanction for Husband's civil contempt, and collection of costs assessed below. Costs on appeal are taxed to the appellee, James S. Lattimore, Jr.

_____
THOMAS R. FRIERSON, II, JUDGE